*In re*  ESTATE OF MYRTLE B. SODERHOLM (John M. Komala *et al.*, Plaintiffs-Appellants, *v.* Oscar B. Soderholm *et al.*, Defendants-Appellees).

First District (4th Division)   No. 83—1761

Opinion filed September 27, 1984.

Richard C. Moenning, of Chicago, for appellants.

Querrey, Harrow, Gulanick & Kennedy, Ltd., of Chicago (Dennis A. Marks, Victor J. Piekarski, and Michael Resis, of counsel), for appellees.

JUSTICE JIGANTI delivered the opinion of the court:

The central issue in this appeal is whether the trial court properly entered a judgment by default against the plaintiffs, John and Vera Komala, as a discovery sanction under Illinois Supreme Court Rule 219(c)(v) (87 Ill. 2d R. 219 (c)(v)). In 1981, the plaintiffs filed a declaratory judgment action seeking a judicial determination that Myrtle B. Soderholm, an incompetent, had the requisite mental capacity to create a number of Totten Trust accounts under which the plaintiffs were the beneficiaries. The defendant-appellee herein, LaSalle National Bank (the conservator), was named as the successor conservator of Myrtle's estate soon after the onset of the lawsuit.[1] The conservator filed an answer to the plaintiffs' complaint, alleging that Myrtle was senile and therefore incapable of creating a valid trust agreement. The conservator further set forth its own prayer for declaratory relief, requesting that the court order the plaintiffs to deliver to

---

[1]The other defendants named in the declaratory judgment proceeding were the conservator of Myrtle's estate prior to the time the bank became conservator, the several banks which held the trust accounts, and a prior joint-tenant to one of Myrtle's accounts. None of these defendants are parties to the instant appeal.

the conservator any property in their possession belonging to Myrtle and seeking a declaration that the plaintiffs had no legal or equitable rights in any of Myrtle's property. The affirmative allegations in support of the conservator's prayer for declaratory relief stated that the plaintiffs had fraudulently abused a fiduciary relationship they owed to Myrtle.

Both of the plaintiffs were deposed under oath during the course of discovery. As we shall discuss at length later in this opinion, the plaintiffs repeatedly lied during their depositions and admittedly destroyed physical evidence which the trial court had ordered them to produce. It was for these discovery violations that a judgment by default was entered against the plaintiffs. Myrtle died on February 21, 1983, over a year after the suit had been filed by the plaintiffs. On March 3, 1983, the conservator filed its motion seeking sanctions for the plaintiffs' violations of discovery rules. The plaintiffs responded and further moved for a voluntary dismissal of their complaint, alleging that Myrtle's death had divested the conservator of authority to request sanctions or pursue the affirmative allegations contained in its answer to the plaintiffs' complaint.

In its order, the trial court entered judgment by default against the plaintiffs and in favor of the conservator as a discovery sanction. It further granted the conservator's motions to dismiss the plaintiffs' complaint with prejudice and to strike the plaintiffs' answer to the conservator's affirmative allegations. The plaintiffs' motion to voluntarily dismiss their own complaint was denied. The plaintiffs now appeal.

The plaintiffs have raised two threshold matters concerning jurisdiction which we must address prior to reaching the merits: whether the trial court improperly refused to voluntarily dismiss the plaintiffs' complaint upon their own motion and whether the court had jurisdiction to impose sanctions and consider the conservator's affirmative allegations following the death of Myrtle. If we find that the trial court possessed jurisdiction to enter its order, we must then address the plaintiffs' argument that the imposition of the sanction of judgment by default was an abusive exercise of the trial court's discretion. The plaintiffs have also raised a number of peripheral matters which shall be discussed at the conclusion of this opinion.

The plaintiffs first contend that the trial court's order is "void as a matter of law" because the court "had no jurisdiction to deny" the plaintiffs' motion to voluntarily dismiss their own complaint. Specifically, the plaintiffs maintain that they possessed an absolute right to voluntarily dismiss their complaint prior to trial. (See *Gilbert-*

*Hodgman, Inc. v. Chicago Thoroughbred Enterprises, Inc.* (1974), 17 Ill. App. 3d 460, 308 N.E.2d 164.) However, section 2—1009 of the Illinois Code of Civil Procedure provides that "*** [a]fter a counterclaim has been pleaded by a defendant no dismissal may be had as to the defendant except by the defendant's consent." (Ill. Rev. Stat. 1983, ch. 110, par. 2—1009(a).) While a plaintiff generally may voluntarily dismiss his action before trial, he may dismiss the action only if the defendant consents once a counterclaim has been pleaded. (*Myers v. Myers* (1977), 51 Ill. App. 3d 830, 366 N.E.2d 114; *In re Marriage of Hanlon* (1980), 83 Ill. App. 3d 629, 404 N.E.2d 873.) In an action for declaratory judgment, an answer including a prayer for relief may be considered a counterclaim. *Country Life Insurance Co. v. Goffinet* (1969), 117 Ill. App. 2d 338, 254 N.E.2d 281.

■ In the instant action, the conservator's prayer for declaratory relief requested that the court order the plaintiffs to deliver to the conservator any property in their possession belonging to Myrtle and sought a declaration that the plaintiffs had no legal or equitable rights in any of Myrtle's property. The conservator's affirmative allegations in support of its prayer for declaratory relief alleged that the plaintiffs had induced Myrtle to create the accounts through fraud and through an abuse of a fiduciary duty they owed to Myrtle. We believe that the conservator's responsive pleadings constituted a viable counterclaim. Because the conservator did not consent to the plaintiffs' motion to voluntarily dismiss their complaint, the trial court properly denied the motion to dismiss.

■ The plaintiffs nonetheless argue that the trial court had no discretion to deny their motion to voluntarily dismiss the complaint because the controversy had become moot. Specifically, the plaintiffs contend that the money in the accounts vested in them as a matter of law when Myrtle died, thus mooting any counterclaim raised by the conservator. As we understand it, the plaintiffs are asking this court to conclude that the money in the accounts became theirs upon Myrtle's death regardless of whether it was procured by fraud or an abuse of a fiduciary relationship. We find this position untenable. The conservator's authority to challenge the creation of the trust accounts must necessarily survive Myrtle's death, and any irregularities in the creation of the trust consequently did not become moot once Myrtle died.

As an alternative argument on this voluntary dismissal issue, the plaintiffs maintain that the conservator had no authority to object to their motion to voluntarily dismiss. Specifically, the plaintiffs contend that the conservator could not challenge the creation of the trusts un-

less the money in the accounts was needed for Myrtle's support during her lifetime. The plaintiffs consequently argue that because the money in the accounts was not needed for Myrtle's support, the conservator could neither challenge the creation of the trusts nor object to the plaintiffs' motion to dismiss their complaint. We disagree.

The plaintiffs cite a number of cases to the effect that a conservator may not use the funds in an already existing Totten Trust account unless the money is needed for the care and support of the ward. (See, *e.g., Rozycke v. Sroka* (1972), 3 Ill. App. 3d 741, 279 N.E.2d 155, *Schlieper v. Rust* (1977), 46 Ill. App. 3d 319, 360 N.E.2d 1192.) In those cases the validity of the creation of the trust accounts was not an issue and the propriety of the conveyances was never questioned. In the instant action, however, the focus of the controversy between the parties centers squarely upon the validity of the creation of the trusts. We therefore do not think that the cases cited by the plaintiffs have any bearing on the case now before this court.

■ A conservator generally has the duty to appear for and represent his ward in legal proceedings and may commence, prosecute or defend a proceeding on the ward's behalf. (See Ill. Rev. Stat. 1983, ch. 110½, par. 11a—18(c).) The conservator also has the statutory duty to care for and manage the ward's estate. (Ill. Rev. Stat. 1983, ch. 110½, par. 11a—18(a).) In this case, the conservator has alleged in its counterclaim that Myrtle was fraudulently induced to create the accounts and that the plaintiffs abused a fiduciary duty which they owed to Myrtle. We believe that the conservator must necessarily be authorized to pursue these allegations on behalf of its ward in order to protect its ward's estate and to fulfill its statutory duty to the ward. Accordingly, we believe that the conservator was properly allowed to object to the plaintiffs' motion to dismiss and to pursue its affirmative allegations in its attempt to set the trusts aside. We consequently find no merit in the plaintiffs' arguments that the conservator could not object unless the money in the accounts was needed for the care and support of Myrtle.

The next jurisdictional issue raised by the plaintiffs concerns the conservator's authority to pursue this action after Myrtle's death. In essence, the plaintiffs maintain that any authority possessed by the conservator to take part in the proceedings terminated upon the death of the ward, Myrtle. The plaintiffs cite no authority in support of their position, and we believe that they are incorrect for two reasons.

■ First, as the conservator correctly points out, the Probate Act specifically provides that the conservator could maintain this action

under the Act with the powers of an administrator to collect. Specifically, section 24—19 of the Act provides:

> "Without order of appointment and until the issuance of letters testamentary or of administration or until sooner discharged by the court, a representative of the estate of a deceased ward has the powers and duties of an administrator to collect." (Ill. Rev. Stat. 1981, ch. 110½, par. 24—19(a).)

Furthermore, in *Hire v. Hrudicka* (1942), 379 Ill. 201, 40 N.E.2d 63, the Illinois Supreme Court found that following the death of a ward, the conservator has all of the powers of an administrator unless an administrator has been appointed. In *Hire*, the conservator sought the recovery of personal assets which had been removed from the deceased ward's general estate, a factual setting similar to that presented in the case at bar. The court further noted that in such a case, the executor is not a necessary party and that the survival of the cause of action undoubtedly survived the death of the ward. Consequently, the conservator's authority to pursue this action did not terminate upon Myrtle's death, because the conservator had the power of an administrator to collect any property removed from the ward's estate by wrongful means.

Our second reason for finding that the conservator's authority to take part in the action did not terminate upon Myrtle's death is that the litigation would have to come to a conclusion before the conservator could render a proper settlement of the ward's estate and file a final account. (See Ill. Rev. Stat. 1983, ch. 110½, par. 24—11.) In *In re Estate of Devereux* (1965), 63 Ill. App. 2d 1, 211 N.E.2d 19, the court found that the trial court had not abused its discretion when it allowed a conservator to maintain an appeal following the ward's death. The proceedings in the trial court in *Devereux* concerned the conservator's disputed sale of certain real property. The court found that the validity of the sale had to be determined prior to the time the conservator could file his final settlement and accounting. Similarly, in the case at bar, it was necessary for this litigation to conclude before it could be determined whether the money in the trust accounts belonged to Myrtle's estate or to the plaintiffs. Therefore, for the two reasons stated above, we do not believe that Myrtle's death terminated the conservator's authority to take part in the litigation.

The plaintiffs' next argument on appeal is that even if the trial court possessed jurisdiction to impose discovery sanctions, it was improper for the court to enter judgment by default against the plaintiffs. The plaintiffs, John and Vera Komala, are married. The record reveals that two sets of "diaries" or "datebooks" were kept by John

for the years 1980 and 1981. There were four diaries, two diaries for each of the years in question. One set purportedly contained references to events which took place in the plaintiffs' lives, including events concerning the plaintiffs' relationship with Myrtle. The second set of diaries was concerned solely with the plaintiffs' relationship with Myrtle.

All of these diaries were in existence at the time of Vera's first deposition. She stated that she had looked at John's "notes" prior to the depositions and that the majority of the notes concerned Myrtle Soderholm. Plaintiffs' counsel stated that he would obtain the notes and make them available to opposing counsel. At Vera's second deposition, 18 sheets of notepaper were given by plaintiffs' counsel to the conservator's counsel. Vera stated that in addition to those notes, she had also reviewed a diary kept by her husband. The plaintiffs' attorney stated that he had the diary in his possession and would not produce it that day. Plaintiffs' counsel also refused to produce the diary when Vera's deposition continued four days later. The conservator then presented a motion to compel discovery in the trial court, and the court ordered the production of John's "date book," which Vera had reviewed prior to her deposition.

At Vera's next deposition, two date books were produced, one for 1980 and one for 1981. Vera stated that these were books of original entry, that they were the only diaries maintained by John during 1980 and 1981, and that they were not altered in any way before being turned over to the plaintiffs' attorney. On the same date as this deposition the plaintiffs executed an affidavit which stated that they had satisfied the conservator's request for production pursuant to the order of the trial court.

John's discovery deposition was subsequently commenced. He stated that the diaries that had been produced were the only diaries he kept and that those diaries were not duplicates made from other diaries. After the deposition, the conservator's lawyer requested that the diaries be produced again for examination by an expert. Counsel for the plaintiffs refused to produce the documents. The conservator presented a motion in the trial court to compel production of the original diaries. John offered to sign an affidavit to the effect that the diaries produced were the only diaries he possessed. The court ordered the production of the diaries for examination.

Soon after the court's order, the trial court was informed that the diaries which had been produced were not original diaries and that they were recreated at some time following the court's first production order. The court was further advised that the original diaries had

been burned and totally destroyed by the plaintiffs. In addition, it came to light for the first time at this hearing that John kept two sets of diaries, one a personal diary and one concerning activities with Myrtle Soderholm.

Additional depositions of Vera and John were taken soon thereafter. Vera admitted that the original diaries had been destroyed and that she thought they had been destroyed some time after the court had ordered their production. John admitted that he had intentionally destroyed all four diaries soon after copies of them had been made. The conservator filed its motion seeking sanctions. After extensive hearings, the trial court entered judgment by default against the plaintiffs, granted the conservator's motion to dismiss the plaintiffs' complaint with prejudice, and further granted the conservator's motion to strike the plaintiffs' answer to the conservator's affirmative allegations. The plaintiffs now argue that these discovery sanctions were not properly imposed by the trial court.

Supreme Court Rule 219(c) provides that the entry of an order of default is a permissible sanction for a party's refusal to comply with the rules of discovery or orders compelling discovery. (87 Ill. 2d R. 219(c)(v).) Although courts are reluctant to impose this extreme sanction of judgment by default, such drastic action is authorized where the conduct of the offending party shows a contumacious disregard of the court's power. (*Sanchez v. Phillips* (1977), 46 Ill. App. 3d 430, 361 N.E.2d 36; *Conover v. Smith* (1974), 20 Ill. App. 3d 258, 314 N.E.2d 638.) In determining whether noncompliance with discovery was unreasonable, courts will look to whether the conduct of the offending party is characterized by a deliberate and pronounced disregard for a court order or whether the actions of the party show a deliberate, contumacious or unwarranted disregard of the court's authority. (*Servbest Foods, Inc. v. Emessee Industries, Inc.* (1980), 82 Ill. App. 3d 662, 403 N.E.2d 1; *George William Hoffman & Co. v. Capital Services Co.* (1981), 101 Ill. App. 3d 487, 428 N.E.2d 600.) Sanctions imposed by the trial court rest largely within the court's broad discretion, and the exercise of such discretion will not be disturbed unless an abuse is apparent. *Sanchez v. Phillips* (1977), 46 Ill. App. 3d 430, 361 N.E.2d 36; *Anderson v. City of Chicago* (1975), 29 Ill. App. 3d 971, 331 N.E.2d 243.

Furthermore, the above cited case law must necessarily be read in conjunction with *Buehler v. Whalen* (1977), 70 Ill. 2d 51, 374 N.E.2d 460, and *Williams v. A. E. Staley Manufacturing Co.* (1981), 83 Ill. 2d 559, 416 N.E.2d 252, two Illinois Supreme Court decisions which strongly encourage the trial courts to vigorously support the protec-

tion of the discovery process by way of the imposition of discovery sanctions. In *Buehler*, the court stated:

> "Our discovery procedures are meaningless unless a violation entails a penalty proportionate to the gravity of the violation. Discovery for all parties will not be effective unless trial courts do not countenance violations, and unhesitatingly impose sanctions proportionate to the circumstances. These are already in Rule 219(c). It provides for varied sanctions, including contempt proceedings. But a contempt procedure is hardly a sanction in reality. The order can, of course, be appealed. The worst penalty is the payment of a nominal fine. Meanwhile, the opposing party may well have been forced to trial without truth, and truth is the heart of all discovery.
>
> Disclosure is the object of all our discovery procedures. It is the opinion of this court that trial courts should make disclosure a reality \* \* \*." (*Buehler v. Whalen* (1977), 70 Ill. 2d 51, 67, 374 N.E.2d 460, 467.)

In *Williams*, the court reiterated this admonition to parties who use the discovery process to impede and harass, stating, "Discovery for all parties will not be effective unless trial courts do not countenance violations, and unhesitatingly impose sanctions proportionate to the circumstances." (*Williams v. A. E. Staley Manufacturing Co.* (1981), 83 Ill. 2d 559, 566, 416 N.E.2d 252, 256.) It is against this background of Illinois case law that we address the facts presented in the case at bar.

■ The central issue in this case was whether Myrtle had the mental capacity necessary to create Totten Trust accounts. The diaries destroyed by the plaintiffs were squarely pertinent to this controlling issue because they directly concerned Myrtle's activities in 1980 and 1981. In fact, one set of diaries contained nothing other than references to Myrtle during those two years. The plaintiffs intentionally and cavalierly destroyed both sets of diaries and deceptively attempted to manipulate the discovery process to serve their own ends. The plaintiffs then compounded their deception by consistently lying under oath about the existence, number and content of the diaries. They further sought to continue this pattern of circumvention by creating bogus and transparently self-serving diaries which they attempted to palm off as the originals. The plaintiffs' actions lead this court to the inescapable conclusion that the plaintiffs believed that the law is composed of a set of rules that do not apply to them; their intentional disregard for the legal process and their perversion of the truth cannot be condemned too harshly. We believe that where the

plaintiffs' actions show such a deliberate, contumacious and unwarranted disregard of the court's authority and where the destroyed evidence is directly relevant to the central issue of the case, the trial court was fully justified in entering a judgment by default against the plaintiffs.

We believe anything less than a sanction of judgment by default in this case would condone the plaintiffs' deceptive attempt to selectively determine what evidence would be presented to the trier of fact. As the supreme court stated in *Buehler*:

> "[A] contempt procedure is hardly a sanction in reality *** [and] *** [t]he worst penalty is payment of a nominal fine." (*Buehler v. Whalen* (1977), 70 Ill. 2d 51, 67, 374 N.E.2d 460, 467.)

Each of those sanctions would allow parties such as the plaintiffs in the instant action to coldly consider discovery violations in a cost-effective manner; they could freely destroy evidence harmful to their case and then gladly pay a minor fine to be cataloged as simply another expense of litigation. Such an abuse of the spirit of this State's discovery rules must not be tolerated at any cost, and we believe that the sanction of judgment by default in this case was fully warranted.

The plaintiffs' cite *Hardware Wholesalers, Inc. v. Clemenic* (1984), 124 Ill. App. 3d 304, 464 N.E.2d 700, as additional authority for their position that it was improper for the trial court to enter a default judgment against them. In *Clemenic*, the appellate court found that the trial court had improperly entered a judgment by default against the defendants as a discovery sanction. However, the appellate court stated that there had been no showing at the trial level that the defendants' conduct was "deliberate and contumacious." Indeed, the appellate court also stated that if the defendants' conduct had been "intentional," the "drastic sanction of default" would have been justified. In the case at bar, the trial court specifically found that the plaintiffs' conduct in destroying the diaries was "deliberate, wilful and contumacious." Accordingly, *Clemenic* offers no support for the plaintiffs' position.

■ The plaintiffs also argue that nothing of substance was deleted from the original diaries when the counterfeit diaries were created and that the conservator made no showing that any material information was missing. Because no one other than the plaintiffs has seen the original diaries, the plaintiffs ask us to simply take their word that they deleted nothing relevant. We decline to do so. The plaintiffs further contend that they were deprived of the right to a jury trial and to equal protection when the court entered judgment by

default against them. However, the plaintiffs did not file a jury demand at the time the action was commenced and therefore waived their opportunity to ever have the matter presented to a jury. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005(a); see also *Greene v. City of Chicago* (1978), 73 Ill. 2d 100, 382 N.E.2d 1205.) Because the plaintiffs forfeited their right to a jury trial, they cannot claim on appeal that they were denied equal protection when their claims were not considered by a jury at the trial level.

■ The plaintiffs next raise a number of arguments concerning a purported affidavit that was filed by the plaintiffs and attached to an affidavit signed by their attorney. The alleged affidavit in question was signed by one Dr. Hemwell and contained certain representations concerning Myrtle's mental state. The plaintiffs now argue that the writing was not an affidavit, that the trial court improperly considered the writing as evidence to the prejudice of the plaintiffs, and that the trial judge was prejudiced against the plaintiffs because he was somehow induced to rely upon the writing. We believe that these arguments find absolutely no support in the record.

First, the complained-of writing was filed by the plaintiffs themselves. We cannot comprehend how a party can introduce a document into the record and then claim that it prejudiced the trial judge against him. Second, in a bench trial, it will generally be presumed that the trial judge considered only proper evidence and disregarded that which was inadmissible in forming his conclusions. (*People v. Harris* (1974), 57 Ill. 2d 228, 314 N.E.2d 465; *People v. Clarke* (1971), 50 Ill. 2d 104, 277 N.E.2d 866.) Furthermore, the plaintiffs' strident claims of prejudice on the part of the trial judge are not supported by a single shred of evidence in the record. Accordingly, we believe that the plaintiffs' arguments are misplaced.

■ The plaintiffs raise two final arguments that we shall consider summarily. First, the plaintiffs maintain that the trial court's order is not supported by competent evidence that Myrtle lacked the capacity to create the trust accounts. However, the effect of the default judgment entered against the plaintiffs is that all well-pleaded allegations in the conservator's counterclaim were deemed admitted against the plaintiffs as the parties in default. (See generally *Walgreen Co. v. American National Bank & Trust Co.* (1972), 4 Ill. App. 3d 549, 281 N.E.2d 462.) Furthermore, the court was not required to hear evidence before entering judgment by default; it is discretionary with the trial court whether to require proof before entry of a default judgment. (See *Schwartz v. Moats* (1971), 3 Ill. App. 3d 596, 277 N.E.2d 529.) In the case at bar, the conservator affirmatively alleged in its

counterclaim that the plaintiffs had induced Myrtle to create the accounts through fraud and through an abuse of a fiduciary duty they owed to Myrtle. These allegations were deemed admitted when a judgment by default was entered against the plaintiffs. The trial court properly exercised its discretion not to hear additional evidence, and we believe that the conservator's affirmative allegations were sufficient support for the trial court's order entering judgment in favor of the conservator.

The plaintiffs' final contention on appeal is that the trial court improperly failed to consider offers of proof made by the plaintiffs. In essence, following the court's order, the plaintiffs attempted to submit to the court another set of recreated diaries which they contended contained all of the entries found in the destroyed diaries. We do not think that the trial court was under any legal obligation to consider yet another self-serving attempt on behalf of the plaintiffs to creatively provide their own evidence.

For the foregoing reasons, the trial court's order is affirmed in all respects.

Affirmed.

LINN, P.J., and JOHNSON, J., concur.