GEORGE WILLIAM HOFFMAN & CO., Professional Corporation, Plaintiff-Appellee, *v.* CAPITAL SERVICES CO. *et al.*, Defendants-Appellants.

First District (4th Division)    No. 80-3033

Opinion filed October 29, 1981.—Rehearing denied November 25, 1981.

James M. DeZelar and Robert Handelsman, both of Robbins, Coe, Rubinstein & Shafran, Ltd., of Chicago, for appellants.

Donald L. Metzger, of Chicago (Metzger & Associates, Ltd., of counsel), for appellee.

Mr. JUSTICE LINN delivered the opinion of the court:

Defendants, Capital Services Co. and Leland Swinehart, appeal from a default judgment entered against them in the circuit court of Cook County. The default judgment was entered on two counts of plaintiff's complaint because of defendants' alleged refusal to comply with the rules of discovery and orders of the court compelling discovery. The judgment as to one count granted plaintiff's request for rescission of a contract and ordered defendants to return to plaintiff $19,000 paid to them under the contract plus $7,500 in expenses incurred by plaintiff in its attempt to carry out the contract. The judgment as to the other count awarded plaintiff $100,000 in compensatory damages allegedly caused by defendants' fraudulent misrepresentation and $250,000 in punitive damages. The trial court also ordered defendants to pay plaintiff $3,443 in attorney's fees incurred by plaintiff as a result of defendants' refusal to comply with discovery.

On appeal, defendants contend: (1) the entry of a default judgment as a sanction for their failure to comply with the rules of discovery and orders of the court compelling discovery, and the denial of their motion to vacate the default judgment, were improper orders; (2) assuming the default judgment was a proper sanction, the entry of judgment against defendant Swinehart on the rescission and restitution count of plaintiff's complaint was improper as a matter of law because he was not a party to the contract and could not be held personally liable for the acts of defendant Capital Services Co.; and (3) assuming the default judgment was a proper sanction, the entry of judgment against defendants on the fraudulent misrepresentation count was improper because plaintiff failed to state a cause of action for fraud and failed to present any evidence of fraud during a hearing held before the trial court in which the plaintiff presented proof of the allegations of its complaint.

We affirm in part and reverse in part.

*Background*

Plaintiff, George William Hoffman & Co., is an accounting firm owned and managed by George Hoffman, a certified public accountant. Defendant, Capital Services Co., is a presently inactive accounting firm whose sole shareholder, president, and only professional employee is defendant Swinehart.

On June 9, 1978, plaintiff and Capital Services Co. (and allegedly Swinehart) entered into a contract for the sale of the accounting practice of Capital Services to plaintiff for a price no less than $45,000 (the actual

amount was to be determined by a percentage of the annual billings of the practice for the first three years following the sale). Under the contract, plaintiff was to make a $15,000 down payment with payments of $1,000 per month thereafter.

The contract was a peculiar work of draftsmanship. Though the named seller was Capital Services Co., and though Swinehart signed the contract "Leland Swinehart President," throughout the contract the seller was referred to in the third person masculine—he, him, his, and himself—and it appears likely that at least some of the promises made by the "seller" were intended to be personal promises of Swinehart. For example, the seller, after the sale, was required to "make himself available, via telephone, * * * as a consultant" to the plaintiff. This term of the contract would appear to have meant that Swinehart was to be available as a consultant and not the corporate entity, which entity, for all intents and purposes, was to be out of business after the sale. Also, one term in the contract required the seller not to compete professionally with plaintiff for five years after the sale. Promises not to compete in the area of professional services are usually made by individuals who are the professionals and not by the corporations through which the services are provided.

One of the important terms of the contract was a warranty made by the seller. In it, the seller warranted that the annual billings of "his practice" were $45,000. If the annual billings proved to be less than $45,000, plaintiff, at its option, could renegotiate the price of sale or rescind the contract and recover all amounts paid and expenses incurred in the performance of the contract, and legal expenses incurred in plaintiff's attempt to recover any such amounts.

Several months after the contract went into effect, plaintiff apparently developed serious problems with the accounting practice it had acquired, among which was the discovery that the annual billings were only $30,000. Plaintiff sent a letter to Swinehart personally and said it was exercising its option to rescind the contract. Swinehart, apparently refused to allow plaintiff to do so and plaintiff brought this action.

In one count of the complaint, plaintiff alleged, among other things, that both defendants had breached the contract warranty that the annual billings were $45,000. (A copy of the contract was attached to the complaint.) Plaintiff sought rescission of the contract, the return of $19,000 plaintiff had paid while the contract was in force, and the recovery of $7,500 in expenses incurred by plaintiff during the time the contract was in force.

In another count in the complaint, plaintiff alleged that defendant Swinehart, on behalf of himself and defendant Capital Services, had knowingly made three false representations to induce plaintiff to enter

into the contract. First, Swinehart had told plaintiff that the annual billings were $45,000 when they were only $30,000. Second, Swinehart had told plaintiff that he was a certified public accountant and that Capital Services was performing services as a certified public accounting firm when, in fact, Swinehart was not certified and Capital Services was not licensed to perform services as a certified public accounting firm. Third, Swinehart had told plaintiff that he had performed all of his services to clients in a professional manner when, in fact, the services he had rendered had actually been done in a careless, sloppy, inaccurate, and unprofessional manner, requiring plaintiff to redo audits, tax returns, and other financial documents for a majority of the clients.

Plaintiff alleged that the above fraudulent representations had caused damage to plaintiff's professional reputation in the amount of $100,000. Plaintiff also sought $250,000 in punitive damages under this count.

The complaint was filed in February 1979. In August 1979, defendants filed their answer denying most of the allegations of plaintiff's complaint.

On October 26, 1979, plaintiff served defendants' attorney with a notice of deposition and a request to produce documents for November 12, 1979. On November 12, defendants' counsel notified plaintiff's counsel that defendant Swinehart could not appear for a deposition or produce documents on that date. Defendants' counsel said that he would make new arrangements to comply with the discovery request.

By November 20, plaintiff's counsel had not been contacted by defendants' counsel to make new arrangements. Plaintiff's counsel wrote a letter to defendants' counsel on that date. In the letter, plaintiff's counsel insisted on compliance with discovery and declared that he believed defendants were intentionally avoiding discovery. Plaintiff's counsel wrote that, unless defendants agreed to submit to discovery, plaintiff would move for sanctions to compel discovery.

Defendants' counsel did not respond to the November 20 letter. On November 29, plaintiff's counsel wrote to defendants' counsel demanding that arrangements be made for defendants to comply with discovery. Plaintiff's counsel also wrote that, if a schedule for complying with discovery was not arranged by December 6, plaintiff would seek sanctions in court.

By December 11, defendants still had not taken any steps to comply with discovery. On that date, plaintiff's counsel served defendants' counsel with a motion for an order compelling discovery. The notice of motion served on defendants' counsel stated that a hearing would be held on the motion on December 19.

On December 19, defendants' counsel failed to appear for the hearing. The trial court entered an order compelling defendants to submit

to the requested discovery by January 11, 1980. The court also ordered that a hearing would be held on January 11 to impose sanctions on defendants if defendants failed to submit to discovery by that date.

Also on December 19, plaintiff's counsel wrote to defendants' counsel explaining the nature of the order entered by the trial court. Plaintiff's counsel also served defendants' counsel with a new notice of deposition and request to produce documents by January 4, 1980.

By January 7, 1980, defendants had still failed to take any steps to comply with discovery. On that date, plaintiff's counsel served defendants' counsel with a petition for a rule to show cause why defendants should not be held in contempt for failure to abide with discovery. The petition requested a contempt order, or, in the alternative, specific sanctions of an order striking defendants' answer and entering a judgment of default. The notice of motion accompanying the petition said that the matter was set for hearing on January 11.

On January 11, plaintiff's counsel received two letters, dated January 8, from defendants' counsel. The letters essentially said that defendants could not comply with discovery by January 11 but that defendant Swinehart could submit to a deposition after January 18. The letters stated no reason for defendants' previous failure to comply with discovery.

At the hearing on January 11, defendants' counsel failed to appear. Plaintiff's counsel showed the trial court the two letters he had received. The trial court entered an order directing that a rule issue compelling defendants to show cause why they should not be held in contempt. The court set the matter for hearing on January 22. The court indicated that at that hearing it would consider the appropriate sanction to be imposed on defendants if defendants still failed to submit to discovery by that date.

At the hearing on January 22, defendants' counsel appeared and told the court that defendants would probably not comply with discovery. Defendants' counsel asked for additional time to attempt to have defendants comply with discovery. The trial court entered an order striking defendants' answer to the complaint and finding defendants in default, but the court delayed the effect of the order until January 29 to allow defendants' counsel to attempt to have defendants submit to discovery by that time.

At a hearing held on January 29, defendants' counsel appeared and said that defendants would not co-operate in the taking of discovery. Because of this, the trial court again entered an order striking defendants' answer and finding them in default. The trial court ordered plaintiff to submit an itemized schedule of legal services for the assessment of attorney's fees. The trial court also ordered plaintiff to prove up the allegations of its complaint and set a hearing for March 24 for the presentation of plaintiff's evidence.

At the hearing held on March 24, no one appeared on behalf of defendants though defendants' counsel had notice of the hearing. Plaintiff, as its only witness, called George Hoffman to testify. He testified that prior to the making of the contract he had talked to defendant Swinehart, whom he knew well, about purchasing his accounting practice. Swinehart apparently wanted to sell his business and retire to Florida. Hoffman said that Swinehart had represented to him that the annual billings of the practice were $45,000 and Hoffman said he had relied on this statement as an inducement to enter into the contract. Hoffman later discovered that the actual annual billings were less than $30,000.

Hoffman testified that he initially believed that Swinehart was doing business as a sole proprietor but discovered, shortly before the contract was entered into, that the business was done in corporate form. Though the contract seller was named as defendant Capital Services, Hoffman, when he entered into the contract, was relying on Swinehart personally to carry out the contract promises as evidenced by the references in the contract to the seller in the third person masculine—he, him, his, and himself.

Hoffman said that shortly after his company took over Swinehart's practice, he discovered that many of Swinehart's clients had not received adequate services when Swinehart was in control. Hoffman found that Swinehart had failed to file timely tax returns on behalf of many of his clients and as a result many of the clients were being investigated by the IRS. Hoffman was required to redo many of the tax returns that Swinehart had filed and redo many of the audits that Swinehart had performed for clients because the audits were inaccurate and done in a careless manner. Hoffman asserted that his firm had spent more than 3,000 hours to perform work that Swinehart should have performed before the sale, and that the time expended was worth at least $7,500. Hoffman testified that many of the clients that he took over were blaming him for the problems that had developed and he had lost business as a result and his reputation was being damaged.

Hoffman said he had paid defendants $19,000 of the purchase price. The amounts were paid by check made out to Capital Services. At the time of the hearing, Capital Services was no longer in business but maintained a bank account. Defendant Swinehart had apparently withdrawn all the payment money from the account because the account showed a balance of less than $1,000.

When asked whether Swinehart had told him that Swinehart was a certified public accountant, Hoffman answered that Swinehart was a certified public accountant.

Based on the above evidence, the trial court, on March 28, 1980, entered judgment for plaintiff on both counts of the complaint. On the

rescission and restitution count, the court found that the contract had properly been terminated pursuant to the warranty term of the contract in which the seller warranted that the annual billings were $45,000 and provided that plaintiff could rescind the contract if the annual billings were less than that amount. Under the rescission and restitution count, the trial court found that both defendants were liable under the contract terms and ordered defendants to pay plaintiff $19,000, representing the payments already made, and an additional $7,500 in expenses incurred by plaintiff during the time the contract was in force.

Under the fraud count, the court found that defendants were liable for fraudulent representations that had caused damage to plaintiff's reputation. The court entered judgment for plaintiff for compensatory damages of $100,000 and punitive damages of $250,000. Additionally, the court ordered defendants to pay plaintiff $3,443 in attorney's fees incurred as a result of defendants' refusal to comply with discovery.

Following the entry of judgment, defendants filed a timely motion to vacate. In this motion, defendants asserted that the judgment was contrary to the law because there had been no proof of fraud and defendant Swinehart could not be held personally liable under the contract because he was not a party to the contract. Defendants offered no excuse for their failure to comply with discovery. Defendants made no offer to comply with discovery in the future.

The motion to vacate was denied and this appeal followed.[1]

OPINION

I

*Sanction of Default Judgment*

The striking of a defendant's answer and the entry of an order of default are permissible sanctions for a defendant's refusal to comply with the rules of discovery or orders compelling discovery. (Ill. Rev. Stat. 1979, ch. 110A, par. 219(c)). However, such a drastic punishment as the entry of default judgment is not favored and should only be resorted to when the defendant has shown a deliberate, contumacious, and unwarranted

---

[1] Shortly before the filing of the notice of appeal, defendants filed a petition for relief under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 72). In this petition, defendants asserted various excuses for their failure to comply with discovery. Defendants have asked us to consider the facts alleged in the petition to determine whether the original judgment was proper. This we cannot do. The basic question before us is whether the original judgment was proper not whether the judgment should be set aside based on a section 72 petition. For us to consider the facts alleged in the section 72 petition to determine whether the original judgment was proper would require us to essentially become a trial court and first determine that the facts alleged are true. At the time the notice of appeal was filed, the trial court had not made any determination on the merits of the section 72 petition, and we cannot assume that the facts alleged in the petition are true before a trial court has even attempted to make such a determination.

disregard for the rules of discovery or orders compelling discovery. *White v. Henrotin Hospital Corp.* (1979), 78 Ill. App. 3d 1025, 398 N.E.2d 24; *Schwartz v. Moats* (1971), 3 Ill. App. 3d 596, 277 N.E.2d 529.

■■ In the present case, defendants ignored repeated requests for discovery and ignored an order of the court compelling discovery. Then, after ignoring the order of the court compelling discovery, defendants were given more time to comply. Finally, when the hearing was held to impose sanctions for defendants' failure to comply, defendants' counsel told the court that defendants would not comply. Thus, in the present case, defendants not only deliberately disregarded the rules of discovery and orders compelling discovery, but actually refused to comply despite the court's giving them every opportunity to do so. Hence, we believe the trial court acted properly within its discretion when it struck defendants' answer and entered an order of default as a sanction for defendants' refusal to comply with discovery.

*Denial of Motion to Vacate*

Defendants contend that even if the entry of the order of default was proper in the first instance, the trial court should have vacated the order of default because plaintiff would have suffered no hardship by being required to proceed with its case, and defendants, in their motion to vacate, asserted meritorious defenses to the causes of action alleged in the complaint.

■■ Defendants' argument misses the point. The entry of the order of default resulted from defendants' refusal to comply with discovery. In order to have the default order set aside, defendants had to come forth, at the very least, with some legitimate excuse for their failure to comply with discovery and show a willingness to comply in the future. (See *Schwartz v. Moats* (1971), 3 Ill. App. 3d 596, 277 N.E.2d 529.) In their motion to vacate, defendants offered no excuse for their previous failure to comply with discovery and did not even offer to comply with discovery in the future. Accordingly, we find the motion to vacate the order of default was properly denied.

II

■■ Though the entry of a default judgment was proper in this case as a matter of procedure because of defendants' refusal to comply with discovery, defendants have also raised issues concerning whether the judgment entered by the trial court was substantively proper. On appeal from a default judgment that is entered solely on the basis of the allegations of a plaintiff's complaint, the defendant can still attack that judgment if the complaint failed to state a cause of action. (*Roe v. Cook County* (1934), 358 Ill. 568, 193 N.E. 472.) Also, if, following the entry of

an order of default, the trial court requires plaintiff to present evidence to prove the allegations of the complaint, then a defendant can challenge the default judgment on appeal based on the legal insufficiency of the evidence to sustain the cause of action alleged. See *Colonial Penn Insurance Co. v. Tachibana* (1977), 53 Ill. App. 3d 981, 369 N.E.2d 177.

In the present case, defendants raise two issues attacking the default judgment. First, defendants allege that the fraud count of the complaint failed to state a cause of action for fraud or, in the alternative, the evidence presented failed to present a prima facie case for fraud and thus the award of $100,000 in compensatory damages for the injury to plaintiff's reputation and of $250,000 in punitive damages was improper. Second, defendants allege the count of the complaint for rescission and restitution failed to state a cause of action against defendant Swinehart or, in the alternative, plaintiff failed to present sufficient evidence to prove a case for rescission and restitution against defendant Swinehart.

## Fraud

Even assuming the complaint stated a cause of action for fraud, we believe that plaintiff failed to present sufficient evidence to sustain the judgment entered as to that count. To sustain an action for fraud based on reliance on misrepresentations made by a defendant, the plaintiff must show: (1) defendant made a false representation of a material fact; (2) defendant, when making the representation, knew the statement was false or made the statement in reckless disregard of the truth; (3) defendant made the statement for the purpose of inducing the plaintiff to do an act; (4) plaintiff acted in reasonable reliance on the statement; and (5) plaintiff suffered injury as a result of his reliance on the statement. See *Mother Earth, Ltd. v. Strawberry Camel, Ltd.* (1979), 72 Ill. App. 3d 37, 390 N.E.2d 393.

In the present case, plaintiff failed to present evidence on practically all of the elements of its cause of action for fraud. To begin with, one of the misrepresentations that defendant Swinehart allegedly made was that he was a certified public accountant. In its complaint, plaintiff alleged that Swinehart was not certified. During the prove up, however, Hoffman said that Swinehart was a certified public accountant. Thus, based on the evidence, there was no misrepresentation.

Next, plaintiff asserted that Swinehart had told him the practice had $45,000 worth of billings per year. Though plaintiff proved that the billings were only $30,000, plaintiff failed to present any evidence which established a causal connection between the representation of annual billings of $45,000 and the injury done to plaintiff's reputation, the only alleged injury under the fraud count.

Next, the only possible misrepresentation that may have resulted in

plaintiff's reputation being injured was the statement allegedly made by Swinehart that he had performed his services in a professional manner. The causal connection plaintiff attempted to establish was that the services had not been done in a professional manner and clients were blaming plaintiff for Swinehart's carelessness and plaintiff was losing clients as a result, and thus, allegedly, plaintiff's reputation was injured. However, during the prove up, Hoffman never said that Swinehart had told him the services had been rendered in a professional manner. Thus, even assuming Hoffman could have reasonably relied on such a statement, there was no proof that the statement was made. Though it might have been implied from the nature of the contract that Swinehart was required to deliver his practice to plaintiff with all previous services having been rendered in a professional manner, an implied term of a contract cannot be raised to the level of a fraudulent representation.

Finally, the only evidence of damage to plaintiff's reputation consisted of general statements that many clients were blaming plaintiff for Swinehart's carelessness and plaintiff had lost some of those clients. Such general statements did not constitute grounds for the entry of a $100,000 judgment, especially considering that the clients plaintiff had lost were clients it intended to lose after the rescission of the contract.

■■ Accordingly, for all the above reasons, we find that plaintiff failed to present sufficient evidence to sustain an action in fraud, and the trial court should have entered judgment against plaintiff under the fraud count. It was improper for the trial court to award plaintiff $100,000 in compensatory damages and $250,000 in punitive damages based on the fraud count of the complaint.

*Rescission*

Defendant, Capital Services Co., does not challenge the substance of the trial court's finding on the rescission and restitution count of plaintiff's complaint as far as it held Capital Services Co. liable. Defendant Swinehart challenges that portion of the judgment as it pertains to Swinehart as an individual. Swinehart asserts that he was not a party to the contract and that the complaint failed to state a cause of action against him personally because there were no allegations justifying the trial court to look beyond the corporate entity and hold Swinehart personally liable for the contract of the corporation. Swinehart also asserts that no evidence was presented to justify a finding of personal liability on the part of Swinehart. We hold that the trial court could have properly found Swinehart personally liable under the rescission count of the complaint.

As previously noted, the contract contained ambiguities. Though the named seller was Capital Services Co., the seller is referred to throughout as "him," "his" or "himself" and not "it" or "itself." Many of the promises

in the contract had to have been intended by the parties to be promises of Swinehart personally, especially considering that both Hoffman and Swinehart knew at the time the contract was entered into that Capital Services would cease to do business after the contract was executed. At the evidentiary hearing, Hoffman testified that when he signed the contract he was relying on Swinehart to carry out the terms of the contract personally.

■■ Accordingly, based on all the facts presented, we believe the trial court could have found that Swinehart was actually a party to the contract and was intended by the parties to be the one who would perform the promises and warranties contained in the contract and to be jointly liable with the corporation if the terms of the contract were breached.

*Conclusion*

For the reasons noted, we hold the following:

(1) the entry of judgment against defendants Capital Services Co. and Leland Swinehart on the rescission and restitution count of the complaint is affirmed and Capital Services and Swinehart are jointly and severally liable to plaintiff in the amount of $26,500.

(2) the entry of judgment against defendants on the fraud count which awarded plaintiff $100,000 in compensatory damages and $250,000 in punitive damages is reversed and we direct that judgment be entered for defendants on that count.

Finally, we note that defendants have not challenged the award of attorney's fees on appeal, and thus we need not determine whether the trial court properly determined the amount of fees.

Affirmed in part, reversed in part.

ROMITI, P. J., and JIGANTI, J., concur.