NORMAN L. SUTTLES *et al.*, Counterplaintiffs and Third–Party Plaintiffs-Appellees, v. PETER J. VOGEL *et al.*, Counterdefendants-Appellants (Jim G. Dawdy *et al.*, Counterdefendants; W. Thomas Ryder, Third-Party Defendant; Leo F. Carroll *et al.*, Third–Party Defendants-Appellees).

Fourth District   No. 4—86—0126

Opinion filed September 10, 1987.—Rehearing denied October 9, 1987.

Duane D. Young, of Long, Dvorak, Rabin & Young, Ltd., of Springfield, and Paul J. Bargiel, P.C., of Chicago, for appellants.

James R. Morrison and Karen Steele, both of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellees Leo F. Carroll and Flynn & Flynn.

Steven Mottaz, of Thomas, Mottaz, Eastman & Sherwood, of Alton, for appellees Norman L. Suttles and Lula Mae Suttles.

JUSTICE LUND delivered the opinion of the court:

Peter J. Vogel and Gerda L. Vogel (the Vogels), counterdefendants, appeal following the denial of a motion to vacate a default judgment entered on July 17, 1985, against them and in favor of Norman L. Suttles and Lula M. Suttles (the Suttles), counterplaintiffs. The default judgment for $600,000 was entered against the Vogels, as a sanction, for failure to comply with discovery orders.

This litigation evolves from the results of a separate cause of action filed by the Vogels under the forcible entry and detainer statute (Ill. Rev. Stat. 1981, ch. 110, par. 9—102), which cause was ruled on by this court in *Vogel v. Dawdy* (1984), 123 Ill. App. 3d 356, 462 N.E.2d 804, and by the Illinois Supreme Court in *Vogel v. Dawdy* (1985), 107 Ill. 2d 68, 481 N.E.2d 679. This court finds it necessary to condense the facts in the prior case to properly present the issues now before the court.

On March 14, 1979, Vogels, as vendors, entered into a contract for the sale of two tracts of farmland to Jim G. and Carolyn S. Dawdy (the Dawdys). The contract included a nonassignability clause. Two hundred thousand dollars was paid down, and $300,000 was payable in April 1979. Annual payments of $150,000 were to follow on each succeeding February 1. On March 16, 1979, Dawdys, as vendors, entered into a contract for the sale of one tract to Suttles for $1,065,000. Suttles paid $350,000 down and were to pay $84,000 per year on each February 15. The remaining tract was sold to Norwood and Barbara Ashley (the Ashleys).

Vogels visited Dawdys' attorney in February 1980, ascertaining

that the Dawdys had entered into the Suttles and Ashleys contracts. On February 27, 1980, Vogels mailed letters to Dawdys and their attorney demanding that breaches of the nonassignability clause of the Vogels-Dawdy contract, as well as a clause of the contract requiring Dawdys to keep the property insured, be remedied within 30 days. Vogels received annual payments from Dawdys in February 1980 and February 1981. No payments were made directly to Vogels by Suttles, but Suttles made annual payments to Dawdys in 1980, 1981, and 1982. Suttles also paid real estate taxes and maintained insurance required by their contract with the Dawdys. Suttles paid to Dawdys $602,000 under the contract. Ashleys paid $280,000 to Dawdys before Ashleys filed for bankruptcy on July 16, 1981. Through 1981, Vogels were paid $800,000 by Dawdys under the Vogels-Dawdys contract.

On June 11, 1980, Vogels brought a forcible entry and detainer action in the circuit court of Greene County, with Dawdys, Ashleys, and Suttles listed as defendants, requesting possession of both tracts of land. Summary judgments were entered against Dawdys and Ashleys following defaults. Vogels and Suttles proceeded to bench trial, and judgment was entered June 28, 1983, granting Vogels possession of the 426-acre parcel which was the subject of the Dawdys-Suttles contract.

Suttles appealed, contending that Vogels failed to give Suttles proper statutory notice and demand required by section 9—102 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1985, ch. 110, par. 9—102) and further that Vogels waived the right to assert a breach of the nonassignment clause because of acceptance of payments after knowledge of the sales to Suttles and Ashleys. The trial court was affirmed by both this court (*Vogel v. Dawdy* (1984), 123 Ill. App. 3d 356, 462 N.E.2d 804) and the supreme court (*Vogel v. Dawdy* (1985), 107 Ill. 2d 68, 481 N.E.2d 679).

On March 31, 1983, the State Bank of Jerseyville filed a suit to foreclose a mortgage, executed by Vogels, on the land which was the subject of the Dawdys-Suttles contract. Vogels, Dawdys, Suttles, and Ashleys were some of the listed defendants. On May 4, 1983, Suttles answered, filed a counterclaim against Dawdys, Vogels, and William C. Sumpter, and filed a third-party complaint against attorney W. Thomas Ryder and attorney Leo F. Carroll. All parties to this appeal were served with legal process. On July 22, 1983, the State Bank of Jerseyville moved to dismiss its complaint for foreclosure, stating that Vogels cured the defaults. This motion was allowed on September 14, 1983. The record indicates that Gerda L. Vogel was served with summons on July 9, 1983, and Peter J. Vogel was served on October 11,

1983. On October 14, 1983, Suttles filed a motion asking that Gerda L. Vogel be defaulted for failing to answer or otherwise plead.

For purposes of this decision, proceedings involving parties other than Suttles, Vogels, and Leo Carroll are not important. Leo F. Carroll (Carroll) filed an answer to count II of the third-party complaint on December 2, 1983, generally denying the legal malpractice allegations stated in that count. On December 9, 1983, Gerda L. Vogel filed a motion to dismiss the Suttles' countercomplaint, suggesting improper service of process. This motion was filed by attorney Edwin R. Parkinson, and listed Parkinson's address as 219 Dunlap Court, Jacksonville. On January 18, 1984, Suttles requested leave to file a third count of their third-party complaint directed to the law firm of Flynn & Flynn, of which Leo F. Carroll allegedly was a partner at the time of the alleged malpractice.

On January 27, 1984, all pending motions were heard by the court, although attorney Parkinson was absent because of illness. The Suttles were allowed to file the count directed to Flynn & Flynn. The defendants were to comply with discovery within 30 days. Gerda L. Vogel's motion to dismiss was denied, and she was directed to respond within 28 days. The clerk was directed to send copies of the January 27, 1984, docket entry to attorneys of record. On February 6, 1984, a written order was filed denying Gerda L. Vogel's motion to dismiss, and this order directed that Gerda answer count II of the Suttles' counterclaim within 28 days. The docket entry for that date states: "Order presented and entered. Court forwards copy of orders to attorneys of record." On the same date, Peter Vogel was defaulted for failure to appear.

On February 27, 1984, attorney Parkinson filed a motion to set aside the default judgment entered against Peter Vogel. An affidavit of Peter Vogel's stated that the service of October 11, 1983, included a copy of the mortgage foreclosure complaint but no copy of the counterclaim. At the same time, Parkinson filed, on Vogels' behalf, a motion to dismiss the counterclaim, which alleged it did not state a cause of action.

Another hearing on pending motions was held on March 21, 1984, at which attorney Parkinson and attorney Mottaz (who represented Vogels) were present. The default judgment against Peter Vogel was set aside, the Vogels' motion to dismiss count II of Suttles' counterclaim was allowed, and Suttles were given 28 days to file an amended count II against the Vogels. Vogels were to file responsive pleadings to the amended count II within 28 days of the filing of the amendment. The cause was set for trial for September 25, 1984.

Suttles filed an amended version of count II of their counterclaim on April 23, 1984, with a copy being mailed to attorney Parkinson. Review of the record fails to show that prior to January 1986 Vogels answered or otherwise pleaded to Suttles' amended counterclaim.

On July 19, 1984, defendant Carroll filed a request for production of documents. This request was addressed to all parties and specifically referred to an abstract of title, as well as other documents. On October 19, 1984, Carroll filed a motion to compel discovery addressed to Peter Vogel. This motion referred to the July 19 request for discovery and a letter to attorney Parkinson dated September 24, 1984, which again requested production of the abstract of title. No compliance by Vogels or Parkinson is indicated. The record indicates that the abstract was necessary for adequate presentation of the parties' cases at trial.

A hearing on January 17, 1985, resulted in an order compelling the Vogels to provide discovery. Vogels were neither personally present nor represented by counsel at this hearing. Vogels were ordered to comply by January 28, 1985. Carroll filed another motion to compel directed to Vogels on February 19, 1985. Notices of hearing on "Second Motion to Compel—Vogel" were sent to attorney Parkinson on February 15 and February 19, 1985. The February 19, 1985, mailing noticed the motion to compel for hearing on March 22, 1985. On February 28, 1985, the Suttles filed an additional motion to compel Vogels to provide discovery, which requested sanctions of striking the Vogels' answer and a default judgment on the basis of Vogels' failure to provide discovery. A copy was mailed to Parkinson on February 27, 1985. A motion to continue trial, filed March 8, 1985, sets forth Vogels' and attorney Parkinson's failures to produce documents pursuant to prior discovery requests. A copy of this document was mailed to attorney Parkinson. The docket entry of March 22, 1985, indicated attorney Parkinson's failure to appear at a hearing on that date. A written order of default was entered on March 25, 1985.

On June 26, 1985, by docket order, Judge Russell set a hearing on prove up for July 17, 1985, and directed the clerk to send copies of the docket entry to attorneys of record. Vogels did not appear on July 17, 1985, either in person or by counsel. Evidence was taken, and a written judgment was entered in favor of Suttles against Peter J. Vogel and Gerda L. Vogel in the amount of $600,000.

It is clear from the record that Vogels did not appear in court, personally or by their attorney, from March 21, 1984, until August 14, 1985, when they, by attorney Parkinson, filed a motion to vacate the default judgment.

The motion to vacate default judgment was not accompanied by a notice of hearing, and it appears Judge Russell set the motion for hearing for September 27, 1985. The hearing took place on September 27 and on October 29, 1985. Judge Russell filed a letter opinion on November 8 setting forth findings that attorney Parkinson is attorney of record for the Vogels and that numerous letters and notices were sent to him by attorneys for parties other than the Vogels and the clerk of the court. The court stated the Vogels "have not complied with discovery requests." The judge then vacated the default judgment conditioned on Vogels's compensating attorney Mottaz and attorney Morrison, who represented Carroll:

> "[F]or their time and services and for their expenses and Court costs in connection with the proceedings in obtaining the default judgment and re: motion to vacate default judgment and in connection with discovery default on part of defendants Vogel and further on the condition that defendants Vogel respond to discovery notices and procedures within 21 days of this date or within the time agreed upon between the parties. Unless the foregoing conditions are fulfilled motion to vacate default judgment is denied."

Attorney Mottaz was directed to prepare a written order consistent with the letter. The written order was eventually signed on December 10, 1985, and filed on December 11, 1985. It was approved as to form by all attorneys.

Meanwhile, on November 19, 1985, attorney Mottaz filed his itemized statement of fees and expenses, totalling $3,824.90. On November 20, 1985, attorney Morrison filed his itemized statement of fees and expenses totalling $4,386. Copies of both statements were sent to attorney Parkinson, and no objections to the amounts were filed.

On December 2, 1985, Vogels, by Parkinson, filed a motion for extension of time, stating Vogels were unable to come up with Morrison's $4,386 and that attorney Mottaz had not filed his statement of fees and expenses. Vogels needed a short extension of time to comply with the November 8 court order.

On December 4, 1985, Suttles filed a motion for entry of an order denying Vogels' motion to vacate the default judgment, alleging a failure by Vogels of compliance with the terms of the Judge Russell's November 8 letter opinion. On December 11, 1985, Judge Russell sent a letter opinion to the lawyers, including Parkinson, stating Vogels still failed to comply with discovery orders and deposition requests. The letter clearly warned Vogels of the effect of their failure. Judge Russell did grant an extension of time to comply with discovery to

January 6, 1986, but stated:

"In the event that defendants do not comply with discovery requests/orders and makes [sic] payment of attorney fees and costs before January 6, 1986 then the Default Judgment entered July 17, 1985 is not vacated and the Motion to Vacate Default Judgment filed by defendants August 14, 1985 is denied."

Peter Vogel filed a three-page document entitled "Response to Request to Produce and Other Discovery" on December 23, 1985, in which he stated the abstract was available for copying at Parkinson's office and that he was available for deposition on the day before and the day after January 13, 1985. Vogel further stated therein that many of the documents mentioned in the requests for discovery were not in his possession.

A letter dated January 3, 1985, from attorney Michael J. Costello, notified Judge Russell that attorney Costello's firm (Costello, Long, Young and Dvorak, Ltd.) would be assuming Vogels' representation, stated that a check from Vogels in the amount of $8,500 had been deposited in attorney Costello's trust account for the Mottax and Morrison fees and expenses, and requested an extension of time to January 20, 1986, for purposes of examining the case file. Costello stated he would enter his appearance on or before January 20, 1986.

Attorney Parkinson filed an additional motion for extension of time on January 7, 1986, saying he could not personally pay the amount of attorney fees the Vogels were ordered to pay without a loan and that an application for such a loan had not yet been approved, that all discovery ordered by the court had been completed and delivered, and all files were to be delivered to attorney Costello. On the same date, Parkinson also filed a motion to dismiss Suttles' counterclaim. On January 22, 1986, Suttles filed an objection to Vogels' motion for extension of time and a motion to deny Vogels' motion to vacate default judgment. Costello, Long, Young, and Dvorak, Ltd., filed its appearance on behalf of Vogels on January 23, 1986.

At a hearing on January 23, 1986, attorney Costello and attorney Richard Muller, both of Costello's firm, appeared on behalf of Vogels. They represented to the court that they had $8,000 in a trust account and wanted to pay the Mottaz and Morrison attorney fees "under protest." They were not aware of the itemized statements filed by attorneys Mottaz and Morrison, which totalled $8,210.90. Attorneys Costello and Muller assured the court that Parkinson had prepared the December 23, 1985, "Response to Request to Produce and Other Discovery." Files and documents had been delivered to the Costello firm which contained various documents, the possession of which Pe-

ter Vogel negated in his December 23, 1985, response to request to produce. All of the documents in Costello and Muller's possession were offered in open court to counsel representing the Suttles, in an effort to comply with discovery, but there was no assurance that the tendered material fully complied with discovery requests. Costello and Muller were not aware of the contents of the December 23, 1985, "Response to Request to Produce and Other Discovery" before Vogel filed it in court. Attorney Costello assured the court that he would "order Mr. Vogel *** to come to Illinois with every document in his possession that is contained in files relating to this matter and go through what he has if he has anything and submit it immediately." There was also reference to the absence from attorney Costello's file of requested transcripts and depositions taken in six other legal proceedings in which Vogel was apparently involved.

At the conclusion of the hearing, Judge Russell stated that no wrongdoing was indicated on the part of either attorney Costello or Muller, but refused further continuances, found failure to comply with the previously stated conditions for vacating the default judgment, and, therefore, denied Vogels' motion to vacate. On January 23, 1986, the circuit court entered an order under Supreme Court Rule 304(a) (103 ill. 2d R. 304(a)) finding that there was no just reason for delaying enforcement or appeal of the denial of Vogels' motion to vacate or the default judgments, as to both liability and damages.

The Vogels appeal the January 23, 1986, order denying their motion to vacate the July 17, 1985, default judgment and related orders. They first contend that the sanction of a $600,000 default judgment is unjust and must be reversed.

■■ ■ The striking of a defendant's pleadings and the entry of an order of default are permissible sanctions for a party's refusal to comply with rules of discovery. (87 Ill. 2d R. 219(c).) However, the sanction should not serve as a punishment or penalty. (*Servbest Foods, Inc. v. Emessee Industries, Inc.* (1980), 82 Ill. App. 3d 662, 680, 403 N.E.2d 1, 15.) Sanctions must be proportionate to the gravity of the violation. (*Spiller v. Continental Tube Co.* (1983), 95 Ill. 2d 423, 430, 447 N.E.2d 834, 837.) The purpose of a sanction is to accomplish the object of discovery. *Fine Arts Distributors v. Hilton Hotel Corp.* (1980), 89 Ill. App. 3d 881, 412 N.E.2d 608.

■ The trial court has broad discretion in conferring sanctions, and its discretionary decision will not be disturbed unless an abuse is apparent. (*In re Estate of Soderholm* (1984), 127 Ill. App. 3d 871, 469 N.E.2d 410.) The rules provide for "just" sanctions to remedy violations of discovery. (87 Ill. 2d R. 219(d).) A "just" order is one which

provides for both the completion of the discovery and trial on the merits. *Gallo v. Henke* (1982), 107 Ill. App. 3d 21, 436 N.E.2d 1068.

■■ ■ A default judgment for failure to comply with discovery should be imposed only as a last resort. (*Stevens v. International Farm Systems, Inc.* (1978), 56 Ill. App. 3d 717, 327 N.E.2d 424.) Normally, a court should impose other sanctions, retaining flexibility to impose progressively harsher sanctions to force compliance with discovery. (*Jaffe v. Fogelson* (1985), 137 Ill. App. 3d 961, 485 N.E.2d 531.) Because courts consider the striking of pleadings, followed by a default judgment, the most severe sanction, such sanction is proper only in those cases where the actions of the offending party show a deliberate, contumacious, or unwarranted disregard for the court's authority. (*Barnes v. Black & Decker Manufacturing Co.* (1984), 135 Ill. App. 3d 700, 708, 481 N.E.1200, 1206.) In order to have a default judgment, entered as a discovery sanction, set aside, a party must present some legitimate excuse for its failure to comply with discovery and show a willingness to comply in the future. *George William Hoffman & Co. v. Capital Services Co.* (1981) 101 Ill. App. 3d 487, 428 N.E.2d 600.

The Vogels contend that because their failure to comply with discovery was not deliberate or contumacious, and no prejudice will result to the parties through a trial on the merits, the default should be vacated. Suttles correctly point out that once defaulted, the burden was on Vogels to show their failure was warranted by extenuating circumstances. (*George William Hoffman & Co. v. Capital Services Co.* (1981), 101 Ill. App. 3d 487, 428 N.E.2d 600.) The only extenuating circumstance of record relates to the failure of Vogels' attorney, Parkinson, to properly attend to the legal proceedings.

Judge Russell had the opportunity to consider attorney Parkinson's conduct and his excuse, consisting of failure of mail delivery caused by his changing office locations during the period of time of the noncompliance. The trial judge obviously discounted this excuse, and the evidence justified the judge's conclusion. Parkinson was present in court on March 21, 1984, when count II of Suttles' counterclaim against Vogels was stricken, with leave to amend, and a trial date was set for September 25, 1984. If Parkinson's excuse relating to mail service was to be believed, then a multitude of letters and notices were not received but not returned to the senders. The attorney's excuse lacks credibility. When the sanctions were requested on March 22, 1985, the trial court was correct in granting relief in view of the Vogels' failure to appear or comply since March 21, 1984. The default judgment as to liability still did not result in compliance with

the discovery orders, nor was there a motion to vacate it. Damages were determined almost four months later. It appears that it took the sum of $600,000 to awaken attorney Parkinson to the financial danger facing the Vogels and himself. Even then, he did not comply with discovery orders at the time of filing of the August 14, 1985, motion to vacate.

Vogels argue that they should not be punished for the wrongdoing of their attorney. The question arises whether or not their attorney's conduct can impute deliberate, contumacious, or unwarranted disregard for the court's authority (*Barnes v. Black & Decker Manufacturing Co.* (1984), 135 Ill. App. 3d 700, 708, 481 N.E.2d 1200, 1206) to the Vogels. The law is settled that a client is bound by the acts and omissions of his attorney. (*Danforth v. Checker Taxi Co.* (1969), 114 Ill. App. 2d 471, 253 N.E.2d 114; *Sanchez v. Phillips* (1977), 46 Ill. App. 3d 430, 361 N.E.2d 36; *Bender v. Pfotenhauer* (1974), 21 Ill. App. 3d 127, 315 N.E.2d 137; *First Bank v. Carswell* (1982), 111 Ill. App. 3d 71, 443 N.E.2d 755.) Any other rule would be

"inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.' *Smith v. Ayer*, 101 U.S. 320, 326 [25 L. Ed. 955, 958]." (*Link v. Wabash R.R. Co.* (1962), 370 U.S. 626, 634, 8 L. Ed. 2d 734, 740, 82 S. Ct. 1386, 1390.)

We conclude that, regardless of what may appear to a layman to be unfair, Vogels must be held responsible for the failures of their attorney, Parkinson.

■ A review of the relevant cases leads us to the conclusion that a party's conduct after the imposition of sanctions for failure to comply with discovery, rather than the correctness of the original sanction order itself, is the important factor in ascertaining whether a motion to vacate a default judgment should be allowed. For instance, substantial compliance with the court's conditions for vacating a default judgment, while not complete compliance, has been held adequate. (*Williams v. City of Chicago* (1977), 54 Ill. App. 3d 974, 370 N.E.2d 119.) Denials of motions to vacate have, however, been affirmed where there have been repeated, unexplained, and apparently deliberate failures to comply with discovery over an extended period of time. (*Elders v. Sears Roebuck & Co.* (1980), 82 Ill. App. 3d 995, 403 N.E.2d 631.) Moreover, the courts on appeal have not hesitated to affirm refusals to vacate defaults when defaulted parties have openly shown their contempt or disregard for discovery orders. *612 North Michigan*

*Avenue Building Corp. v. Factsystem, Inc.* (1975), 34 Ill. App. 3d 922, 340 N.E.2d 678; *Servbest Foods, Inc. v. Emessee Industries, Inc.* (1980), 82 Ill. App. 3d 662, 680, 403 N.E.2d 1, 15; *John Mathes & Associates, Inc. v. Noel* (1981), 94 Ill. App. 3d 588, 418 N.E.2d 1104; *Peoples Gas, Light & Coke Co. v. Chicago Black Improvement Association* (1986), 148 Ill. App. 3d 1093, 502 N.E.2d 8.

We agree that, assuming that there was a valid defense to Suttles' claim, a $600,000 default judgment results in a severe sanction. The burden was, however, on Vogels to show a legitimate excuse for their failure to comply and a willingness to comply in the future. Once Judge Russell filed the letter opinion of December 11, 1985, any failure to comply with the conditions stated therein had to be explained by a legitimate excuse coupled with a showing of a willingness to comply in the future.

When Judge Russell conditionally vacated the default judgment, he clearly indicated his understanding that the goal of discovery sanctions is not to punish but rather to accomplish compliance with discovery. The conditions of reimbursing the parties requesting discovery for their attorney fees and expenses and compliance with discovery were reasonable. Even if Vogels could have eventually succeeded in having Suttles' amended claim stricken, Carroll, who was a party, was entitled to have the sought-after discovery because of its relevancy to his defense against Suttles' malpractice claim. The question here presented is whether Judge Russell abused his discretionary powers when on January 23, 1986, he refused further continuances, found failure to comply with the earlier stated conditions, and denied the motion to vacate the $600,000 default judgment.

We agree that, in order to secure compliance with discovery requests, sanctions should, if possible, be progressive. Judge Russell's sanctions were in fact progressive. Default judgment was entered as to liability, then damages assessed, then the default judgment was vacated, provided that Vogels comply with reasonable terms. The Vogels cannot use attorney Parkinson's failures as an excuse for their failure to comply with discovery orders.

■ At the October 24, 1985, continuation of the hearing on Vogels' motion to vacate default judgment, attorney Michael Taylor testified that he had represented Vogels in other actions and was contacted by Vogels' daughter in the latter part of July 1985 when she received a notice of the default judgment. Taylor refused to represent Vogels. On December 2, 1985, attorney Parkinson filed a motion for extension of time, still without tendering discovery, but pleading Vogels' lack of funds to pay the ordered fees and expenses. Over ob-

jection, Judge Russell, on December 11, allowed the extension. Vogels met with attorney Costello "on or about" the 16th day of December 1985. On December 23, 1985, the aforementioned "Response to Request to Produce and Other Discovery" " was filed under Peter Vogel's signature. Vogel's statement in the "Response" about limited availability for depositions, considering the liability that existed, is amazing and could easily be considered contemptuous of the court proceedings. Attorney Costello requested a continuance by his January 3, 1986, letter and indicated money for the fees and expenses was available. The January 23, 1986, hearing, as indicated by the record, was the ultimate frustration for Judge Russell. Absent full compliance with discovery requests and payment of the fees and expenses prior to that hearing, Judge Russell was within the bounds of reasonableness in denying the motion to vacate. Judge Russell had shepherded the case for over two years, constantly faced with noncompliance with discovery, and on January 23, 1986, had no real indication that complete discovery would be provided within a reasonable time, if ever. This court does not find that Judge Russell abused his discretionary powers when entering the January 23 order.

■ Vogels next assert that regardless of the issue of unjustness of the sanction imposed, the default judgment must be vacated because count II of Suttles' amended complaint did not state a cause of action.

Count II of Suttles' amended counterclaim basically alleges: (1) Dawdys sold 426 acres of land to Suttles by installment contract dated March 16, 1979; (2) Vogels sold the same 426 acres to Dawdys by installment contract dated February 24, 1979, and executed March 14, 1979; (3) Vogels knew Suttles were purchasing the 426 acres from Dawdys and were making payments under the contract and paying real estate taxes on the 426 acres; (4) Vogels accepted the benefits of the Dawdys-Suttles contract and received payments attributable to Suttles in excess of $60,000 (the $60,000 probably was a mistake and was intended by the Suttles to read $600,000); (5) the Vogels-Dawdys contract contained a nonassignment clause, but Vogels knew of the assignment to Suttles in 1979, Suttles verified with Vogels that Dawdys had made the 1980 installment payment, and Vogels acquiesced in or ratified the Dawdys' assignment to Suttles and were estopped from claiming that the Dawdys' assignment to Suttles was ineffective; (6) Vogels indirectly received moneys from Suttles as third-party beneficiaries of the Dawdys-Suttles contract; (7) permitting the Vogels to retain the purchase price payments traced to the Suttles would be unjust enrichment; (8) a constructive trust should exist to prohibit

Vogels from unfairly profiting at Suttles' expense; and (9) the Suttles' beneficial interest in the disputed property is $600,000, and Vogels were unjustly enriched in that amount.

A default judgment is subject to attack at any time if the complaint on which it is premised fails to state a cause of action. (*Roe v. County of Cook* (1934), 358 Ill. 568, 193 N.E. 472; *George William Hoffman & Co. v. Capital Services Co.* (1981), 101 Ill. App. 3d 487, 428 N.E.2d 600.) When attacking the sufficiency of a complaint to state a cause of action, the well-pleaded facts are treated as admitted. (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 430 N.E.2d 976.) The issue here is whether Vogels' counterclaim states a cause of action for imposition of a constructive trust.

■■ ■ A constructive trust is solely a creature of the courts of chancery and is established on purely equitable grounds. It is distinguished from other trusts in that the existence of an agreement or intention to create a trust, expressed or implied, is not necessary. Basically, the purpose of constructive trusts is to prevent one party by the use of unfair, wrongful, unjustified, or fraudulent action from taking advantage of another. (35 Ill. L. & Prac. *Trusts* sec. 61 (1958).) "Although a constructive trust may arise in the absence of fraud, generally fraud or an abuse of a confidential or fiduciary relationship is an absolute prerequisite or an indispensable basis of a constructive trust." 35 Ill. L. & Prac. *Trusts* sec. 62 (1958).

"It has sometimes been stated that 'fraud' is at the bottom of every constructive trust. 'Fraud' is, of course, a very ambiguous word. It may mean misrepresentation which would give ground for an action of deceit. It may imply the acquisition of property by some other type of wrongdoing or by any type of inequitable conduct. Certainly it is not true that all constructive trusts are based on 'fraud,' unless that word is used in its broadest sense to include all conduct which equity treats as unfair, unconscionable and unjust." [Citations.] G. G. Bogert & G. T. Bogert, The Law of Trusts and Trustees sec. 471, at 22-23 (rev. 2d ed. 1978).

Many of the cases involving constructive trusts deal with real estate transactions, and it is generally agreed that one cannot enforce an oral contract through the use of a constructive trust because of the Statute of Frauds.

"If the vendee has paid part or all of the price, and the vendor repudiates the contract and sets up the Statute, naturally the vendee may recover the amount paid. It would seem that this should be the only remedy available, but there are occa-

sional cases decreeing a constructive trust. [Citations.]" G. G. Bogert & G. T. Bogert, The Law of Trusts and Trustees sec. 479, at 184-86 (rev. 2d ed. 1978).)

"The contract vendee in this type of case is disappointed but there is no unjust enrichment at his expense. He has lost a chance to make a profit by obtaining the land, but the Statute of Frauds in substance states that such a loss shall be the penalty for the informality of his contract." (G. G. Bogert & G. T. Bogert, The Law of Trusts and Trustees sec. 479, at 188 (rev. 2d ed. 1978).)

However, the circumstances under which a constructive trust may be imposed have been more broadly stated:

"Any transaction may be the basis for creating a constructive trust where for any reason one holds funds or property which in equity and good conscience should be possessed by another." 35 Ill. L. & Prac. *Trusts* sec. 64 at 246 (1958).

When circumstances exist which require the creation of a constructive trust:

"[I]f the trust property or its product can be traced into the hands of a third party, a constructive trust may be imposed upon the property in the hands of the third party unless he is a bona fide purchaser for value and without notice. [Citations.] (G. G. Bogert & G. T. Bogert, The Law of Trusts and Trustees sec. 471, at 5-6 (rev. 2d ed. 1978).)

Also:

"The plaintiff has the election of bringing suit in equity for the imposition of a constructive trust or seeking damages in an action at law for the value of the property [which would constitute the trust res], although equity is not limited in the types of relief that may be granted to enforce a constructive trust." [Citations.] G. G. Bogert & G. T. Bogert, The Law of Trusts and Trustees sec. 471, at 6 (rev. 2d ed. 1978).

In the present case, it appears that Suttles are contending that a constructive trust arises because Vogels took funds that went from Suttles to Dawdys to Vogels as the payment on a contract for the purchase of the 426 acres, knowing that the money was coming from Suttles, and then after receiving $600,000 of the funds Suttles paid to Dawdys, exercised their right to cancel the Vogels-Dawdys contract because Dawdys had assigned their interests under the contract. We recognize that the amended counterclaim, filed April 23, 1984, does not refer to Vogels' forcible entry and detainer action, which resulted in Vogels taking back possession of the 426 acres. Such an allegation

would be necessary to allege a loss to Suttles. The statement in *Roe v. County of Cook* (1934), 358 Ill. 568, 193 N.E. 472, that a default judgment is subject to attack at any time for "failure to state a cause of action," referred to the absence of a legal right, not to inadequate pleading where a right of action might otherwise exist. If the Vogels had attacked the amended counterclaim in a proper and timely method, any pleading imperfections could have been corrected by further amendment. Illinois requires specific pleading in contrast to notice pleading. (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 430 N.E.2d 976.) However, we find that the insufficiency in the existing complaint is one of form and not substance which should have been brought to the circuit court's attention by Vogels before it entered default judgment against the Vogels. In considering whether default judgment was correctly entered, a complaint based on a nonexistent cause of action should be treated differently from one which is based on a possible cause of action.

As previously indicated, the Illinois courts have not always required wrongdoing by one party in order to find that a constructive trust should be imposed, if the person in possession of the disputed property would be unjustly enriched if permitted to retain the property. (*Spafford v. Coats* (1983), 118 Ill. App. 3d 566, 455 N.E.2d 241.) In *Spafford*, the Second District suggested the propriety of a constructive trust where a live-in boyfriend (Coats) retained motor vehicles which were paid for and were placed in his name by his girlfriend (Spafford). Spafford placed the titles in Coats' name for insurance reasons, and, apparently, Coats' only wrongdoing was his refusal to transfer the vehicle titles to Spafford when the parties ceased living together. The Fifth District has recently taken a contrary position, holding that unjust enrichment, standing alone, is not conduct which will support the imposition of a constructive trust. The court implied that for an order for a constructive trust to be imposed, there must be unjust enrichment and some wrongdoing on the part of the person who is asserted to have been unjustly enriched. *Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.* (1985), 137 Ill. App. 3d 84, 484 N.E.2d 349.

The question of whether Suttles could state a claim for constructive trust under the facts indicated by the amended counterclaim is evidently one of first impression. The various cases relating to constructive trusts and the textbook descriptions of constructive trusts lead us to the conclusion that if a vendor sells a tract of land by an installment sales contract which includes a nonassignability clause, receives substantial funds which he knows have come from an assignee

of that contract after being contacted by the assignee, and then successfully exercises his rights under the nonassignability clause in a forcible entry and detainer action, he is unjustly enriched to the extent that the sum of the payments exceeds the fair rental value of the property, and a constructive trust could be imposed upon the funds that he has knowingly received from the assignee of the contract. The basis for this holding is that, as in *Spafford*, the person deemed to be a constructive trustee would, but for the court's decision, retain a significant amount of property for which he provided no consideration and which was not intended as a gift.

The Vogels further contend that the cause of action alleged in count II of the amended counterclaim is barred by the *res judicata* effect of the decision in the prior forcible entry and detainer action. The present action is an equitable action seeking funds allegedly wrongfully held by Vogels. It does not seek title to or possession of real estate.

> "The doctrine of *res judicata* provides that 'a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the *same* claim, demand or cause of action.' (Emphasis added.) (*People v. Kidd* (1947), 398 Ill. 405, 408.) When *res judicata* is established 'as a bar against the prosecution of a second action between the same parties upon the same claim or demand *** it is conclusive not only as to every matter which was offered to sustain or defeat the claim or demand, but as to any other matter which might have been offered for that purpose. [Citations.]' *Barry v. Commonwealth Edison Co.* (1940), 374 Ill. 473, 478." *Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 251-52, 461 N.E.2d 959, 961-62.

Forcible entry and detainer is a summary statutory proceeding to adjudicate rights to possession and is unhampered and unimpeded by questions of title and other collateral matters not directly connected with the question of possession. *Bleck v. Cosgrove* (1961), 32 Ill. App. 2d 267, 177 N.E.2d 647.

Section 5 of "An Act in regard to forcible entry and detainer" provides as follows:

> "Sec. 5. On complaint in writing by the party or parties entitled to the possession of such premises being filed in the circuit court for the county where such premises are situated, stating that such party is entitled to the possession of such premises (describing the same with reasonable certainty), and that the

defendant (naming him) unlawfully withholds the possession thereof from him or them, the clerk of such court shall issue a summons.

The defendant may under a general denial of the allegations of the complaint give in evidence any matter in defense of the action. No matters not germane to the distinctive purpose of the proceeding shall be introduced by joinder, counterclaim or otherwise: Provided, however, that a claim for rent may be joined in the complaint, and judgment obtained for the amount of rent found due." Ill. Rev. Stat. 1979, ch. 57, par. 5.

■■ Originally, equitable defenses were not available in a forcible entry and detainer action. However, that has changed, and such defenses are available if "the matters raised thereby are germane to the distinctive purpose of the action." *Worley v. Ehret* (1976), 36 Ill. App. 3d 48, 55, 343 N.E.2d 237, 242-43; *Rosewood Corp. v. Fisher* (1970), 46 Ill. 2d 249, 263 N.E.2d 833; *Jack Spring, Inc. v. Little* (1972), 50 Ill. 2d 351, 280 N.E.2d 208.

■■ The Vogels' forcible entry and detainer action was brought under the provisions of section 2, subparagraph "Fifth" of "An Act in regard to forcible entry and detainer," which provided that an action can be brought against a contract of sale vendee who has failed to comply with the agreement. (Ill. Rev. Stat. 1979, ch. 57, par. 2.) While the issue of waiver of the nonassignability clause would have been a relevant issue, a counterclaim against Vogels for $600,000, based on the constructive trust theory, would not have been germane to the distinctive purpose of the forcible entry and detainer action. As is indicated in paragraph 5, the right to litigate rent due is the only exception to the rule that only possession may be litigated in a forcible entry and detainer action. We conclude that since Suttles' present claim could not have been brought as a counterclaim in the forcible entry and detainer action, the judgment entered in that action does not, through application of the doctrine of *res judicata*, bar Suttles' present counterclaim seeking imposition of a constructive trust.

Vogels also contend that Suttles' counterclaim is barred by the doctrine of collateral estoppel.

"The doctrine of collateral estoppel applies when a party or someone in privity with a party participates in two separate and consecutive cases arising on *different* causes of action and some controlling fact or question material to the determination of both causes has been adjudicated against that party in the former suit by a court of competent jurisdiction. (See *Illinois State Chamber of Commerce v. Pollution Control Board* (1979),

78 Ill. 2d 1, 7.) The adjudication of the fact or question 'in the first cause will, if properly presented, be conclusive of the same question in the later suit' (*Hoffman v. Hoffman* (1928), 330 Ill. 413, 417), but 'the judgment in the first suit operates as an estoppel only as to the point or question *actually litigated* and determined and not as to the other matters which might have been litigated and determined.' (Emphasis added.) *Charles E. Harding Co. v. Harding* (1933), 352 Ill. 417, 427; see also *Grip-Pak, Inc. v. Illinois Tool Works, Inc.* (7th Cir. 1982), 694 F.2d 466, 469, *cert. denied* (1983), 461 U.S. 958, 77 L. Ed. 2d 1317, 103 S. Ct. 2430." *Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 252, 461 N.E.2d 959, 962.

The only issue resolved in the forcible entry and detainer action, which Vogels assert is material to Suttles' counterclaim, is whether Vogels waived their right to compliance with the nonassignability clause by accepting payments from the Dawdys after learning of the purported assignment to the Suttles. The Vogels' purported waiver of the nonassignability clause is not, however, dispositive of the question of whether a constructive trust may be imposed under the circumstances here present. Under the facts of this case, imposition of a constructive trust is premised on one party's retaining a substantial amount of money belonging to a second party for which the second party received no consideration. The only question concerning the circumstances of the second party's parting with the property is whether the second party intended it be a gift to the first party. That, admittedly, is not the case here.

We agree that the question of whether Vogels knew the source of all payments, when they received them, is material to the issue of whether a constructive trust may be imposed. The circuit court in the forcible entry and detainer action made no specific finding as to when Vogels first learned of Suttles' occupancy of the disputed property. It follows that the statements in the opinions of this court and the supreme court concerning Vogels' knowledge, or lack of knowledge, that Suttles were occupying the disputed property when Vogels received payments toward its purchase price do not signify that the issue of Vogels' knowledge upon receipt of the payments was necessarily litigated in the circuit court. Vogels point to nothing else in the record of the forcible entry and detainer action which supports the conclusion that this issue was litigated in that proceeding.

We find that the controlling facts in the forcible entry and detainer act are not necessarily the controlling facts in the present action.

Also, Vogels maintain that a statement in the supreme court's opinion in the forcible entry and detainer action that "[t]he Suttleses could pursue a remedy only under their contract with the Dawdys," precludes the Suttles from maintaining the present action. This statement is a part of the following paragraph:

"Here, however, the question of waiver and the election of remedies does not apply. As between the Vogels and the Suttles, there was no contract and, thus, no contractual relationship. It cannot be contended, therefore, that there was a waiver by the Vogels of the nonassignment clause or a pursuit by the Vogels of inconsistent remedies as to the Suttles. The Dawdys made a separate contract with the Suttles. The Suttles could pursue a remedy only under their contract with the Dawdys." (*Vogel v. Dawdy* (1985), 107 Ill. 2d 68, 77, 481 N.E.2d 679, 683-84.)

When the sentence upon which the Vogels rely is considered in context, it becomes clear that it was at most intended to refer to the Suttles' right to maintain an action at law on the basis of breach of contract, and that it was not intended to apply to any equitable causes of action that the Suttles might have.

Vogels' further contention that Suttles' evidence on the liability issue was insufficient is without merit. The trial court defaulted Vogels on the issue of liability, and no evidence was required.

For the reasons set forth in this opinion, we affirm the orders from which Vogels appeal.

Affirmed.

SPITZ, P.J., and KNECHT, J., concur.