**INLAND TRUCKING CORPORATION**

v.

**UNITED STATES.**

No. 50095.

United States Court of Claims.
July 15, 1960.

Julius Schlezinger, Washington, D. C., for plaintiff. Joseph B. Friedman and Friedman, Locker & Schlezinger, Washington, D. C., were on the briefs.

Kendall M. Barnes, Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

WHITAKER, Judge.

Plaintiff, a Philippine trucking company, sues to recover $56,022.56 which it says is due under a Government contract which it alleges it has successfully performed. The contract in question was for the transportation of Government cargo from piers in Manila to army depots in the Manila area. The defendant has withheld payment of the amount in suit to reimburse it for cargo lost while in transit in plaintiff's trucks.

The issue presented is whether, under the contract, plaintiff is liable for the losses. The specific contract provision in question is Article 3, which reads as follows:

> "*Responsibility for Cargo.*—The Contractor shall assume full responsibility for cargo in transit from the pier to the Depot until it has been delivered to the Government. Any loss or damage to the cargo due to the fault of the Contractor's employees prior to the delivery shall be upon the Contractor and not upon the Government, and the Government shall deduct from each current invoice such reimbursement or compensation as may be due and owing it from the Contractor on account of loss or damage of cargo suffered by the Government."

Plaintiff claims that it is not liable under this provision since its negligence did not cause the losses. To the contrary, defendant says that the contract made plaintiff liable for all losses incurred during transit regardless of cause. In the alternative, the defendant argues that even if plaintiff's construction of the contract is correct, it is not entitled to recover, since it accepted without protest the amount of its charges, less a deduction for lost cargo, and thereby waived its right to demand the amount withheld.

The contract was performed by plaintiff during the period from November 14, 1946, to June 16, 1947. Shortly before that time, the Armed Forces in the Far East, including the Philippines, had been demobilized and returned to the United States, and because of the resulting shortage of military transportation it became necessary to hire commercial vehicles to transport military supplies. Shortly after this practice began, some time in September or October 1946, it became apparent that measures would need

to be taken to protect the Government cargoes from theft while being hauled by commercial carriers. At first the Base Commander of the Philippine Base Command ordered his Provost Marshal to place military policemen, when available, on all trucks leaving the Post area loaded with pilferable cargo. At this time the military guards supplemented any guards furnished by the private carriers, and the carriers were urged to do all they could do to help lessen the thefts.

Sometime in December 1946 defendant changed its policy. Experience had disclosed that frequently there was collusion between the private company guards and drivers and the thieves to loot the cargoes, and, therefore, the Army prohibited from this time on any employees of the trucking companies, other than the driver, from riding in trucks carrying Government cargo.

The exact date of the issuance of this order is important and is in dispute. Defendant has produced a letter from the Provost Marshal to all contract trucking companies, dated February 14, 1947, which stated that it was written to confirm verbal orders issued on December 27, 1946, prohibiting civilian riders in trucks carrying Government cargo. Plaintiff's witnesses testified that the order was in fact issued earlier, in the middle of December. The witnesses were unable, however, to fix an exact date. Defendant's evidence is the more convincing, and, accordingly, we find that the date of the order was December 27, 1946. After this date, the United States assumed full responsibility for the protection of the cargoes from molestation by third parties. Plaintiff, however, remained responsible for the fault of its employees.

Army cargoes which were being transported by plaintiff pursuant to the contract were "hijacked", that is, held up and robbed, on November 19, 1946, December 18, 1946, December 23, 1946, January 11, 1947, and February 5, 1947. In each case the truck was being guarded by an armed military policeman and the cargo was lost because the military policeman and the driver employed by plaintiff connived with the hijackers in the robbery.

Under these facts, we believe plaintiff is liable for all losses which occurred prior to December 27, 1946, and that defendant must assume liability for losses after that date. As we have pointed out, prior to December 27, plaintiff was allowed and urged to do whatever it could to protect the cargoes. Under Article 3 of the contract, plaintiff assumed this obligation when it accepted full responsibility for the loss or damage of Government property in transit. The record is clear that plaintiff did little or nothing to protect this property, since the cost of furnishing guards was prohibitive. We think this failure amounts to negligent action on the part of the plaintiff and, therefore, it must, under the plain terms of Article 3 of the contract, assume the loss which resulted.

The fact that defendant provided guards for the trucks does not alter this responsibility. The defendant was under no obligation to guard the cargoes and it did so only after plaintiff failed to fulfill its contractual duty. Under such circumstances, liability for loss remains with the plaintiff. The contract provided that "the contractor shall assume full responsibility for cargo in transit."

It is true that defendant's agents, the military policemen, were in part responsible for the thefts, but of course criminal activities of this nature are outside the scope of the agent's employment, and it is well settled that the principal is not responsible for such action. There is no evidence in the record which would indicate that the defendant was negligent in selecting its guards, and it, therefore, cannot be clothed with liability. On the other hand, the contract provided that "any loss or damage to the cargo *due to the fault of the contractor's employees* prior to delivery shall be upon the contractor and not upon the Government. * * *" [Italics supplied.] Under this the contractor was responsible for what its employees did, whether their acts were in the scope of their employment or not.

However, what we have said above is not applicable to losses which occurred after December 27, 1946. After that date defendant no longer allowed plaintiff to provide protection of any sort for the trucks. The defendant assumed the full responsibility for the security of the cargoes, except for the negligence or wrongdoing of plaintiff's employees, and specifically denied plaintiff the right to participate in their protection. Plaintiff was no longer capable of performing its duty of safeguarding the cargoes from loss, since the defendant by its assumption of full control over security had made plaintiff's performance impossible, and discharged plaintiff from its obligation to pay for losses under Article 3 of the contract, except those for which its own agents can be shown to be responsible. But it is impossible to show this, because, while plaintiff's drivers continued to connive with the hijackers, defendant's guards did so also, at least to some extent.

Besides the deduction made for the value of the five hijacked cargoes previously discussed, the defendant has also deducted the sum of $5,836.25 for shortages attributed by the defendant to other causes. These involve minor losses incurred at various periods during plaintiff's performance. There is no evidence in the record which shows the cause of any of these shortages. For the reasons previously stated, we believe that plaintiff must bear the expense for items lost prior to December 27, 1946, since it had the right and the duty to provide security for the trucks during that period. Plaintiff, however, was discharged from its obligation under Article 3 of the contract by defendant's interference after December 27, and deductions made after that time were improper.

In both its brief and oral argument defendant has contended that plaintiff's petition must be dismissed since plaintiff accepted the sum actually paid without protesting the deductions made for lost cargo. All of the shortages above described were set forth on one or another of a succession of invoices submitted by plaintiff to defendant, and in each case it was certified by one of plaintiff's officers that the invoice was "correct and just." Also, on January 8, 1948, at the time of final payment of the balance of amounts due under the contract, less the deductions, plaintiff signed a voucher prepared by the Army which contained a certificate which stated "that payment of this voucher represents complete and final settlement of the contractor's claim under this contract and a formal release is not required." Plaintiff, however, contends that at the time of each payment it orally protested the deductions. Plaintiff's General Manager, E. L. Kincaid, testified at the trial that he had protested some deductions and he had ordered the other officers of the corporation who accepted payment to protest the others. This testimony is strengthened by the fact that in the case of each deduction, timely appeals were filed with the Chief of the Claims Service, AFWESPAC, and these appeals were diligently prosecuted. These appeals were still pending at the time plaintiff accepted the final payment under the contract.

On these facts the Trial Commissioner has found that plaintiff in fact did protest the deductions and that it did not intend to waive its protest or abandon its claim when it accepted final payment and the defendant's representatives so understood. We concur in this finding.

It results that plaintiff is entitled to recover all deductions made by defendant for losses which occurred after December 27, 1946. Judgment will be entered to that effect, and the amount of recovery will be determined pursuant to Rule 38(c), 28 U.S.C.A.

It is so ordered.

JONES, Chief Judge, and DURFEE, LARAMORE, and MADDEN, Judges, concur.