(No. 60114.—

PETER J. VOGEL *et al.*, Appellees, v. JIM G. DAWDY *et al.* (Norman Suttles *et al.*, Appellants).

*Opinion filed July 17, 1985.*

Steven N. Mottaz, of Thomas, Mottaz, Eastman & Sherwood, of Alton, for appellants.

Edwin R. Parkinson, of Jacksonville, and G. Michael Taylor, of Springfield, for appellees.

JUSTICE WARD delivered the opinion of the court:

On June 11, 1980, Peter and Gerta Vogel (Vogels) brought a forcible entry and detainer action in the circuit court of Greene County against Jim and Carolyn Dawdy (Dawdys), Norwood and Barbara Ashley (Ashleys) and Norman and Lula Mae Suttles (Suttles), to obtain possession of two tracts of farmland in Greene County. The tracts were noncontiguous. One tract consisted of 426 acres and the other 385 acres. The Vogels, on March 14, 1979, had entered into a contract of sale with the Dawdys for the sale of the tracts. Shortly after the contract was executed, the Dawdys entered into a contract of sale with the Ashleys in regard to the 385-acre parcel and with the Suttles for the sale of the 426-acre parcel. On April 25, 1983, the circuit court, following defaults by the Dawdys and Ashleys, entered summary judgments against them. Neither the Ashleys nor the Dawdys are a party to this appeal. On June 28, 1983, the circuit court, following a bench trial, entered judgment, granting the Vogels possession of the parcel

held by the Suttles. The appellate court affirmed (*Vogel v. Dawdy* (1984), 123 Ill. App. 3d 356), and we granted the Suttles' petition for leave to appeal under Rule 315 (87 Ill. 2d R. 315).

The contract between the Dawdys and the Vogels was a real estate installment contract. The price of the two farms was to be $1,850,000. There was to be a $200,000 down payment, $300,000 was to come due in April 1979, and the balance was to be paid in yearly installments of $150,000 on each February 15, commencing in 1980. The purchasers agreed:

"Not to sell, assign, grant, set over or convey the premises herein conveyed nor to assign their interest, or any part thereof, in this contract without the prior written consent of the Sellers, which will not be unreasonably withheld."

The contract also required the buyers to secure specified insurance coverages, subject to approval by the sellers, and further provided that the buyers were to pay all taxes on the properties. The contract provided that a breach of any provision of it would be considered a default of the contract warranting forfeiture.

On March 16, 1979, two days after the Vogel-Dawdy contract was signed, the Dawdys entered into a contract to sell the 426-acre parcel to the Suttles, and on May 9, 1979, the Dawdys contracted with the Ashleys for the sale of the 385-acre parcel. These contracts for sale were made without the consent or knowledge of the Vogels. The contract price of the 385-acre tract to the Ashleys was $962,500; the contract for the sale of the 426-acre tract to the Suttles had a sales price of $1,065,000. The Ashleys were to make a $356,500 down payment in six payments over the following 18 months and annual installment payments commencing February 1, 1980, until the balance was paid. The Dawdys had received $280,000 under their contract with the Ashleys, as of July 16,

1981, when a petition in bankruptcy as to the Ashleys was filed. Under the contract with the Suttles, a $350,000 down payment was received by the Dawdys when the contract was entered into and annual installment payments to the Dawdys of approximately $84,000 beginning February 15, 1980, were called for. The down payment and three installment payments were paid to the Dawdys by the Suttles. In early 1983, a bankruptcy petition in regard to the Suttles was also filed. It does not appear in the record whether the petitions in bankruptcy were voluntary.

The Vogels' complaint in forcible entry and detainer against the Dawdys, Ashleys and Suttles for possession alleged several breaches of the Vogel-Dawdy contract and alleged they constituted defaults under the contract. In a second count directed at the Ashleys and the Suttles, the complaint realleged the Vogel-Dawdy contract breaches and claimed that their rights as subsequent contractors with the Dawdys were subordinate to the Vogels' right to possession under the contract.

The breaches of contract the complaint alleged were that (1) the Dawdys assigned their interest in the contract to third parties, *i.e.*, the Ashleys and the Suttles, without the consent of the Vogels; (2) the Dawdys failed to provide the insurance coverage the contract required; (3) the Dawdys failed to pay real estate taxes on the properties; and (4) the Dawdys removed timber from the land without the Vogels' consent.

As stated, both the Dawdys and Ashleys defaulted and summary judgments were entered against them. (The Vogels took possession of the 385-acre Ashley tract in June 1983.) Peter Vogel and Norman Suttles testified in the remaining case against the Suttles.

Vogel testified that after the contract with the Dawdys in March 1979 was entered into he lived in California. In November 1979, Vogel learned from his wife's

cousin that someone other than the Dawdys was occupying his land. He then telephoned Dawdy about it numerous times, but Dawdy denied contracting to sell the land. Vogel testified that he traveled to Illinois in early February 1980 and visited the office of the Dawdys' attorney. There Vogel ascertained that the Dawdys entered into separate contracts to sell the parcels.

Vogel testified that he was particularly disturbed that what he regarded as a 811-acre farm was divided and resold. He considered the tract a single economic unit, as the crops on one parcel were needed to support the feed lot on the other parcel. Preserving the property as a single unit was the reason, he stated, for the nonassignment clause in the contract with the Dawdys.

On February 27, 1980, Vogel mailed letters to the Dawdys and their attorney, advising that he considered that the Dawdys had breached the contract by contracting to sell the property to third parties without his consent and by failing to secure the insurance coverage provided for. The letter stated that unless the breaches were rectified within 30 days, legal action would be taken. Vogel testified that when he wrote the letter he did not know specifically that the Ashleys or Suttles claimed any interest in the land, and that he had no contact with the Suttles until after he had filed the suit. He testified that he received an annual installment payment from the Dawdys in February 1980 and one in February 1981. Vogel stated that he never received any payment from the Suttles.

The testimony of Mr. Suttles was that he contracted to purchase the 426-acre tract from the Dawdys on March 16, 1979. Suttles said that he knew the Dawdys had contracted to acquire the land from the Vogels, because the Vogel-Dawdy contract was specifically referred to in Suttles' contract with the Dawdys. Suttles testified, however, that he never read the Vogel-Dawdy contract

and stated that he was unaware of the clause in that contract which prohibited the Dawdys from selling or assigning their interest in the land. The Suttles had been represented by counsel when they contracted with the Dawdys.

Suttles testified that he made three annual payments, in February 1980, February 1981 and March 1982, to the Dawdys under their contract with the Dawdys, but that he never made any payments to the Vogels. He said that his first installment payment to the Dawdys was by check drawn in favor of the Vogels and the Dawdys jointly, but the Dawdys returned the check and requested Suttles to make them the sole payees. Suttles also testified that he had paid all real estate taxes on the land and had secured the insurance coverage called for by his contract with the Dawdys.

On June 27, 1983, the circuit court entered judgment awarding possession of the 426 acres to the Vogels. The court held that, as the Suttles contracted with the Dawdys with knowledge of the Vogel-Dawdy agreement, they were charged with knowledge of the terms of that contract and could not be considered "good faith purchasers." The court further held that the Suttles' rights under their contract with the Dawdys were limited to the rights the Dawdys acquired under their contract with the Vogels and dependent on the Dawdys' continued performance of their contract with the Vogels. Upon the Dawdys' breaches of their contract with the Vogels (including the failure to insure and the contract of sale of the parcel to the Suttles), the court said that the Suttles' right to possession of the land was automatically extinguished. The appellate court affirmed the circuit court. 123 Ill. App. 3d 356.

The Suttles contend that (1) the circuit court did not have jurisdiction to grant possession to the Vogels because the Vogels failed to give the Suttles proper statu-

tory notice and demand under section 9—102 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 9—102) (part of the forcible entry and detainer statute) and (2) the Vogels waived their right to assert a breach of the nonassignment clause in their contract with the Dawdys, because they accepted payments from the Dawdys under the contract after becoming aware of the claimed breach by the Dawdys.

The Code of Civil Procedure provides for the restoration of possession to the person entitled to it:

> "(2) When a peaceable entry is made and the possession unlawfully withheld.
>
> * * *
>
> (5) When a vendee having obtained possession under a written or verbal agreement to purchase lands or tenements, and having failed to comply with the agreement, withholds possession thereof, after demand in writing by the person entitled to such possession." Ill. Rev. Stat. 1981, ch. 110, pars. 9—102(2), (5).

Referring to section 9—102(5) the Suttles claim that they should be considered vendees under a written contract to purchase land and therefore, must have been served with a demand in writing in order for the Vogels to bring an action for possession. It is undisputed that the Vogels did not make to the Suttles a demand in writing for possession. The Vogels' response is that they were proceeding under section 9—102(2) of the Code, since the Suttles entered the land peaceably and unlawfully withheld possession. The Vogels assert that no demand is required under this paragraph.

We consider that the Vogels are correct and that their proceeding was under section 9—102(2). The Suttles are not vendees of the Vogels. The appellate court correctly noted that section 9—102(5) requires a contractual relation between the vendee and the person seeking possession. Here there was none.

The statute sets out when a demand in writing is necessary to maintain an action for forcible entry and detainer. (See *Loekelt v. Stoltz* (1944), 323 Ill. App. 164 (a demand in writing is required only if the plaintiff brings the action for possession under a clause which specifically requires it).) No demand in writing is necessary to maintain an action for possession of land under section 9—102(2) (*Sullivan v. Culp* (1931), 260 Ill. App. 443; see also *La Salle National Bank v. Smith* (1961), 29 Ill. App. 2d 51 (abstract of opinion)) or other parts of the statute which do not set out the statutory requirement of a prior demand (*Stillman v. Palis* (1890), 134 Ill. 532 (section 9—102(1)); *First National Bank v. Bohnhorst* (1940), 305 Ill. App. 251 (section 9—102(4))). Contrary to the Suttles' view, we do not regard *West Side Trust & Savings Bank v. Lopoten* (1934), 358 Ill. 631, 638, as holding that a demand in writing is required under 9—102(2).

The Suttles next contend that the Vogels have waived their right to assert a breach of the nonassignment clause of the Vogel-Dawdy contract by accepting payments under that contract after they had learned of the breach.

It is true that a provision for forfeiture in a contract or lease may be waived by the actions of the seller or lessor, such as by acceptance of payments from the purchaser or lessee after notice of forfeiture. (*Zeta Building Corp. v. Garst* (1951), 408 Ill. 519, 524; see 5 Williston, Contracts sec. 741 (3d ed. 1961).) As the appellate court noted, however, this type of waiver is applied in "late payment" cases. It is invoked to avoid a vendor's being able to lull a vendee into not meeting contract terms and then claiming such noncompliance as a breach of the contract. (*Lang v. Parks* (1960), 19 Ill. 2d 223; *Aden v. Alwardt* (1979), 76 Ill. App. 3d 54; see 3A Corbin, Contracts sec. 754 (1960).) Too, the Suttles correctly state that a vendor, after declaring a contract forfeiture, cannot pursue inconsistent remedies. (*Rosewood Corp. v. Transa-*

*merica Insurance Co.* (1974), 57 Ill. 2d 247, 255; *Wollenberger v. Hoover* (1931), 346 Ill. 511, 546; see 5 Williston, Contracts sec. 687 (3d ed. 1961).) The Vogels cannot, they say, invoke a remedy based on disaffirmance of the Vogel-Dawdy contract, *i.e.*, the suit for possession, and at the same time accept payments under its terms.

Here, however, the question of waiver and the election of remedies does not apply. As between the Vogels and the Suttles, there was no contract and, thus, no contractual relationship. It cannot be contended, therefore, that there was a waiver by the Vogels of the nonassignment clause or a pursuit by the Vogels of inconsistent remedies as to the Suttles. The Dawdys made a separate contract with the Suttles. The Suttles could pursue a remedy only under their contract with the Dawdys.

In any event, even if it is deemed that the Vogels waived their rights under the nonassignment clause with the Dawdys, there remains the circuit court's specific holding that the contract had also been breached because of the failure to provide insurance according to the contract and the failure to provide proof of proper insurance. In addition, the circuit court determined that the failure to pay real estate taxes was also a breach of the contract. These breaches are sufficient to support the circuit court judgment that the Dawdys defaulted under the contract and that the Vogels were entitled to possession of the land.

There remains the issue of the crops planted and harvested on the 426-acre tract in 1983. On July 11, 1983, the circuit court enjoined the Suttles from selling, moving or encumbering the 1983 crops planted by Suttles then maturing on the 426-acre tract. Thereafter, the Vogels took possession of the tract in the fall of 1983 under the judgment granting the writ of restitution and possession. The appellate court, during the pendency of the appeal before it, ordered the circuit court to appoint a receiver

to hold the proceeds of the sale of the crops in escrow.

During the appeal here, the Vogels moved that the receiver be ordered to use the crop sale proceeds to pay real estate taxes. On November 14, 1984, allowing the motion, we directed the receiver to pay real estate taxes on the property "which is the subject matter of this appeal." The circuit court interpreted this order to mean that the proceeds would be used to pay the taxes only on the 426-acre tract farmed and previously held by the Suttles. The Vogels then filed a second motion, asking that the receiver be ordered to pay the real estate taxes on the entire 811 acres. The Suttles filed objections, saying that the crop proceeds should be used to pay taxes only on the 426-acre parcel that they had farmed. The motion was taken with the case.

As the appellate court noted, since the question of the right to growing crops was not raised prior to appeal, there is no decision of the circuit court on the question to review. The cause must be remanded to the circuit court to determine who is entitled to the proceeds of the sale of the crops and to wind up the receivership. A ruling by the circuit court on entitlement to the sale proceeds is required before the pending motion of the Vogels can be ruled on. Accordingly, the motion is dismissed.

For the reasons given, the judgments of the appellate and circuit courts are affirmed; the cause is remanded to the circuit court for further proceedings not inconsistent with this opinion.

*Judgments affirmed;*
*cause remanded.*

JUSTICE MILLER took no part in the consideration or decision of this case.