**Cole Taylor BANK, Plaintiff–Appellee,**

v.

**TRUCK INSURANCE EXCHANGE, Defendant–Appellant.**

No. 94–2492.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 13, 1995.

Decided April 5, 1995.

---

David C. Roston (argued), John W. Morrison, Daniel H. Fogel, Altheimer & Gray, Chicago, IL, for plaintiff-appellee.

William J. Sneckenberg, Benjamin E. Alba (argued), John W. Billhorn, Sneckenberg & Associates, Chicago, IL, for defendant-appellant.

Before POSNER, Chief Judge, and BAUER and RIPPLE, Circuit Judges.

POSNER, Chief Judge.

We are asked, in this diversity breach of contract case, to decide whether one of the parties waived one of its rights under the contract. Waiver is one of a multitude of contract doctrines that allow oral testimony to modify the terms of an apparently clear written contract. There is no more vexing question in contract law than when a written contract can be rewritten by oral testimony. "Always" is an unsatisfactory answer because it defeats one of the main purposes of written contracts, which is to protect a contracting party against the vagaries of juries. *AM International, Inc. v. Graphic Management Associates, Inc.,* 44 F.3d 572 (7th Cir.1994); *Trident Center v. Connecticut General Life Ins. Co.,* 847 F.2d 564 (9th Cir.1988). "Never" is equally unsatisfactory, because of the acute danger of misinterpretation by a reader ignorant of the contract's commercial setting. In *AM International,* discussing the doctrine of extrinsic ambiguity, e.g., *Isbrandtsen v. North Branch Corp.,* 150 Vt. 575, 556 A.2d 81, 84 (1988), which allows the use of evidence, oral or written, to show that a seemingly clear contract is ambiguous, we concluded that the law draws the line between "objective" and "subjective" testimony. The former, illustrated by evidence of trade usage, is evidence that is capable of being given by disinterested witnesses. The latter

is the self-serving testimony of one of the parties to the contract. Objective testimony can be used to help interpret a written contract even if the contract seems unambiguous; subjective testimony is admissible (if the parties do not agree to its use) only if the contract seems ambiguous. *AM International, Inc. v. Graphic Management Associates, Inc., supra,* 44 F.3d at 575–76; *Carey Canada, Inc. v. Columbia Casualty Co.,* 940 F.2d 1548, 1557 (D.C.Cir.1991); *Mellon Bank, N.A. v. Aetna Business Credit, Inc.,* 619 F.2d 1001, 1011–13 (3d Cir.1980).

Failure to make this distinction, and to recognize its embodiment even in the law of states that have seemed promiscuously willing to allow parties to avoid the clear import of a written contract—even, indeed, in California, see, e.g., *Winet v. Price,* 4 Cal.App.4th 1159, 6 Cal.Rptr.2d 554, 558–59, 562 (1992); *FPI Development, Inc. v. Nakashima,* 231 Cal.App.3d 367, 282 Cal.Rptr. 508, 520–22 (1991); *Pacific Gas & Electric Co. v. Zuckerman,* 189 Cal.App.3d 1113, 234 Cal.Rptr. 630, 648 (1987); cf. *General Motors Corp. v. Superior Court,* 12 Cal.App.4th 435, 15 Cal.Rptr.2d 622, 627 n. 3 (1993), where the doctrine of extrinsic ambiguity was expansively interpreted in *Pacific Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Co.,* 69 Cal.2d 33, 69 Cal.Rptr. 561, 442 P.2d 641 (1968); see also *C.R. Anthony Co. v. Loretto Mall Partners,* 112 N.M. 504, 508–09, 817 P.2d 238, 242–43 (1991)—explains what we respectfully suggest may have been the exaggerated concern expressed by the Ninth Circuit in the *Trident* case with the doctrine's corrosive effect. We are not in California, moreover, and anyway the California decisions since *Trident* have declined to endorse that decision's interpretation of California law. *ACL Technologies, Inc. v. Northbrook Property & Casualty Ins. Co.,* 17 Cal.App.4th 1773, 22 Cal.Rptr.2d 206, 218 (1993); *Banco Do Brasil, S.A. v. Latian, Inc.,* 234 Cal.App.3d 973, 285 Cal.Rptr. 870, 893 (1991); *FPI Development, Inc. v. Nakashima, supra,* 282 Cal.Rptr. at 521 n. 10; cf. *Nedlloyd Lines B.V. v. Superior Court,* 3 Cal.4th 459, 11 Cal.Rptr.2d 330, 336–37, 834 P.2d 1148, 1154–55 (1992). Not defending what *ACL Technologies, Inc. v. Northbrook Property &*

*Casualty Ins. Co., supra,* 22 Cal.Rptr.2d at 218, aptly termed the "'deconstructionist' dictum" of Chief Justice Traynor's opinion in *Pacific Gas & Electric,* yet describing *Trident* 's characterization of California law as "unfortunate" and "inaccurate," the court in *Banco Do Brasil* stated that "the courts simply can not permit clear and unambiguous integrated agreements, such as the one before us, to be rendered meaningless by the oral revisionist claims of a party who, at the end of the game, does not care for the result." 285 Cal.Rptr. at 893. For further examples, see *Gerdlund v. Electronic Dispensers Int'l,* 190 Cal.App.3d 263, 235 Cal.Rptr. 279, 284–85 (1987), and the cases cited there.

What is true is that the doctrine of extrinsic ambiguity, even when confined to situations in which the ambiguity is demonstrated by objective evidence, makes it difficult to decide contract cases on the pleadings; for it is always open to one of the parties to try to present objective evidence that will show that an ostensibly clear contract is unclear when the usages of the trade or other contextual factors are taken into account. But the risk of erroneous interpretations would be very great if parties could not present even unimpeachable evidence that the clarity of the written contract was illusory.

We have to consider whether the contract doctrine of waiver also obeys the objective/subjective distinction. We simplify the facts slightly. Truck Insurance Exchange issued to Accurate Leather and Novelty Company an insurance policy that among other things insured Accurate's property against damage or destruction by fire. Cole Taylor Bank had lent money to Accurate against a credit line of $2.5 million and had secured the loan by means of perfected security interests in Accurate's inventory and other property. An endorsement to the insurance policy that Truck Insurance Exchange had issued to Accurate named Cole Taylor Bank as a "loss payee" and committed the insurance company to "pay any claim for loss or damage jointly to you [Accurate] and the Loss Payee, as interest may appear." As is customary when money is borrowed from a bank, Accurate had a checking account in Cole Taylor Bank.

A fire caused extensive damage to Accurate's inventory, supplies, and other personal property. Truck Insurance Exchange agreed to pay for the damage. It did so by means of a series of checks over a period of several months. The first was for $300,000 and was made payable to Accurate, which deposited it in its account at Cole Taylor Bank. The second, which was for $259,000, likewise. The third was for $47,000. It was made payable to both Accurate and the bank, was endorsed by Russell Cole, a vice-president of the bank (no relation to the "Cole" in the bank's name), and was, like the other checks, deposited in Accurate's checking account at the bank. The fourth check (for $35,000) likewise. The fifth and last check, which was for $12,000, was again made out to Accurate only.

The insurance money deposited in Accurate's account was withdrawn and used for various expenses. In endorsing two of the checks and thus permitting Accurate to withdraw the funds deposited by them without further consent from the bank, Russell Cole understood that the funds were to be used to replace inventory destroyed by the fire. Whether they actually were used for this purpose is unclear.

■ Sometime after withdrawing the last of the insurance money, Accurate went broke, and as a result defaulted on its loan from the bank. In this suit against the insurance company, the bank contends that by failing to name the bank as a payee in three of the five checks the insurance company violated the "loss payee" clause, of which the bank—all concede—was a third-party beneficiary. *Bates & Rogers Construction Corp. v. Greeley & Hansen,* 109 Ill.2d 225, 93 Ill.Dec. 369, 373, 486 N.E.2d 902, 906 (1985); *155 Harbor Drive Condominium Ass'n v. Harbor Point, Inc.,* 209 Ill.App.3d 631, 154 Ill.Dec. 365, 374, 568 N.E.2d 365, 374 (1991). The bank seeks damages equal to the face amount of the three checks (some $571,000). The insurance company acknowledges that it made a mistake in failing to name the bank as an additional payee of the three checks, but argues that the bank had waived compli-

ance with the loss-payee clause. The district judge granted summary judgment for the bank, so in evaluating the insurance company's appeal we must construe the facts as favorably to the insurance company as the record will permit.

■ The insurance contract was explicit in requiring the insurance company to recognize the bank as a loss payee and to pay claims on the policy in a fashion that would enable the bank to enforce its interest. As there is no doubt that the insurance company violated a clearly stated contractual duty, the question becomes whether the company can use the doctrine of waiver to avoid the duty. Unlike modification of a contract, the efficacy of a waiver of a contractual right is generally not thought to require special tokens of reliability, such as a writing, consideration, reliance, judicial screening (see *AM International, Inc. v. Graphic Management Associates, Inc., supra,* 44 F.3d at 575), or a heightened standard of proof. See 2 E. Allan Farnsworth, *Contracts* § 8.5, p. 375 (2d ed. 1990); *Wisconsin Knife Works v. National Metal Crafters,* 781 F.2d 1280 (7th Cir.1986) (majority and dissenting opinions); *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.,* 50 F.3d 388, 390 (7th Cir.1995). What is more, a waiver of contractual rights can be implied as well as express—implied from words or actions inconsistent with the assertion of those rights. *Ryder v. Bank of Hickory Hills,* 146 Ill.2d 98, 165 Ill.Dec. 650, 653, 585 N.E.2d 46, 49 (1991); *Lavelle v. Dominick's Finer Foods, Inc.,* 227 Ill.App.3d 764, 169 Ill.Dec. 800, 804, 592 N.E.2d 287, 291 (1992); *Havoco of America, Ltd. v. Sumitomo Corp.,* 971 F.2d 1332, 1337 (7th Cir.1992) (interpreting Illinois law).

The potential inconsistency of the doctrine of waiver so understood with the principle that parties should not be allowed to get out of their written contracts by self-serving testimony is manifest. You can always say that the other party to your contract had orally waived the enforcement of a provision favorable to him. Yet all that waiver means, when it is carefully defined, is the intentional relinquishment of a right. *Id.* at 1338; *Ryder v. Bank of Hickory Hills, supra,* 165 Ill.Dec. at 653, 585 N.E.2d at 49; *Lavelle v. Dominick's*

*Finer Foods, Inc., supra,* 169 Ill.Dec. at 804–05, 592 N.E.2d at 291–92. ("Waiver" is often used as a synonym for "forfeiture," as when the failure to present a ground to the district court is deemed to "waive" the ground in the court of appeals. But we mean to use it here in its strict sense of a *voluntary* relinquishment.) Any mentally competent person is allowed to relinquish most of his constitutional rights without any formalities; it might seem all the clearer that he should be able to relinquish his contractual rights without formalities.

But the courts have not been indifferent to the danger of self-serving testimony that the other party to the contract waived a right that the contract had conferred on him. In some cases they have required proof of reliance on the alleged waiver, in effect converting the doctrine of waiver into the harder-to-prove doctrine of estoppel. That was the tack we took in the *Wisconsin Knife* case, interpreting a provision on waiver in the Uniform Commercial Code (§ 2–209(4)). Illinois—whose law we apply in this case—requires that an alleged waiver either have induced reliance or that it be *clearly* inferable from the circumstances. *Lavelle v. Dominick's Finer Foods, Inc., supra,* 169 Ill.Dec. at 804–05, 592 N.E.2d at 291–92; *Tibbs v. Great Central Ins. Co.,* 57 Ill.App.3d 866, 15 Ill.Dec. 146, 147, 373 N.E.2d 492, 493 (1978); cf. *Vogel v. Dawdy,* 107 Ill.2d 68, 89 Ill.Dec. 836, 840, 481 N.E.2d 679, 683 (1985). Professor Farnsworth points out that waiver is frequently limited to minor conditions. 2 Farnsworth, *supra,* § 8.5, pp. 378–79.

The fact that the courts have not converged on a blanket general requirement of reliance, consideration, a writing, a heightened standard of proof, or other means of assuring the reliability of questionable evidence may reflect the inherent implausibility of offers to prove "bare" waiver in a contractual setting. Unless the right waived is a minor one (this is the logic of Farnsworth's suggestion), why would someone give it up in exchange for nothing? If something is given in return, then there is consideration. If purely "subjective" evidence of waiver is incredible in an arm's length contractual setting, the exclusion of such evidence may not

be necessary in order to prevent the erosion of the subjective/objective decision that is an essential feature of a sensible law of contracts.

This case turns out to be a good illustration of why the doctrine of waiver does not threaten to swallow a law of contracts that is committed to the distinction. The principal evidence on which the insurance company relies in arguing waiver is objective. It does not so much as claim that anyone at the bank said, "Don't bother to put our name on the checks to Accurate; we waive our rights under the loss-payee clause." Such testimony would not only be self-serving (if offered by an employee of the insurance company); it would be incredible, because such a clause is an important part of the protections for which a lender contracts. The first piece of evidence on which the insurance company relies is an affidavit by Mark Mallon, Accurate's secretary-treasurer. Accurate is not a party, so Mallon's evidence is presumptively disinterested, and therefore "objective" in the sense in which the self-serving testimony of a party is not. In the affidavit Mallon states that shortly after the fire he told Russell Cole that the insurance company would be paying for the damage and that it would be necessary to apply the funds to the replacement of inventory. Cole was evidently convinced, for he endorsed the two checks from the insurance company in which the bank was named as an additional payee, and by endorsing freed Accurate to withdraw the funds deposited by means of these checks. He knew, moreover, that Accurate had received additional checks (the first two) totaling $559,000; he knew this because an audit of Accurate by the bank shortly after the second check was issued disclosed the two checks. He knew, but did not react.

That is all the evidence, construed as favorably to the insurance company as the record permits, and we agree with the district judge that it is not enough to create a genuine issue of material fact concerning waiver. The fact that Russell Cole knew that Accurate wanted to use the insurance proceeds to replace inventory rather than to pay down its line of credit from the bank is no evidence that he consented to the use of the *entire* proceeds for that purpose—indeed, that he consented to anything. The fact that *after* the insurance company had in breach of the loss-payee clause drawn two large checks to Accurate without naming or giving notice to the bank, Cole discovered that Accurate had received two large checks of which he had known nothing was no evidence of waiver either. The breach was complete. What is more important—since one can relinquish a right after it has been infringed as well as before, *Vogel v. Dawdy, supra,* 89 Ill.Dec. at 840, 481 N.E.2d at 683; *National Distillers & Chemical Corp. v. First National Bank,* 804 F.2d 978, 982 (7th Cir.1986) (interpreting Illinois law); 2 Farnsworth, *supra,* § 8.5, pp. 377–78—is that there is no evidence that Cole knew that the two checks had not been properly made payable to the bank along with Accurate and had not been endorsed. Cole was not authorized to endorse checks that large. He would therefore have had no reason to suppose that the two checks had not been endorsed to Accurate, since any endorsement would have come from someone higher in the bank's hierarchy rather than from himself.

■ Even if Russell Cole had known that the two checks had not been endorsed and therefore that the insurance company had broken its contract, it would not follow that either his inaction or his subsequent action in endorsing two checks (albeit much smaller) to Accurate was evidence of a waiver of rights under the contract. The victim of a breach of contract is not required upon learning of the breach to wail and tear his hair. The law may require him in some contractual settings to take some action to protect his contractual rights, for example to notify a seller of nonconforming goods of the breach within a reasonable time. UCC § 2–607(3)(a). But no such requirement was operative here. The breach being complete, which gave the bank a remedy against the insurance company, Russell Cole may have figured that the bank could "afford" to cut Accurate a little slack by letting it spend the proceeds of the next two checks, which were much smaller, to replace inventory, although a likelier inference is that he assumed that the previous checks had been properly endorsed by someone else at the bank and that

it was the bank's policy to let Accurate use the proceeds to replace its inventory rather than to reduce the line of credit. Such a policy would make sense. When the fire occurred, Accurate owed the bank much more than the insurance proceeds—$2.4 million versus a little more than $650,000. If the proceeds were used to pay back the bank, Accurate would not be able to replace its inventory and so might be precipitated into bankruptcy, owing the bank a great deal. If the proceeds were used instead to replace inventory and keep Accurate afloat, there would be a greater likelihood of eventual repayment of the bank. In the event, the bank got the worst of both worlds: it lost the opportunity to reduce its loan to Accurate by the amount of the insurance proceeds, and Accurate went broke without repaying any significant part of the loan. But if the judgment that the bank made was reasonable when made though it turned out badly, it could not be accused of having failed to mitigate its damages; and anyway mitigation is not argued.

There was no waiver, and the insurance company might have been better advised to defend on the ground that the breach of contract did not in fact cause any injury to the bank, because, in all likelihood, the bank would have endorsed the two big checks too, just as it did the small ones. Mallon's affidavit is some evidence that the bank would have acquiesced in a demand by Accurate to apply the entire insurance proceeds to the purchase of new inventory, and the insurance company might have sought additional evidence. Perhaps it did, and turned up nothing. At all events, it does not argue that the bank suffered no loss—*that* ground for a remand has clearly been waived.

AFFIRMED.