MAYER, Circuit Judge,
dissenting-in-part.
I join the court’s opinion, except for Part I-C, which concludes that the government waived the right to challenge the partial assignment by Vermont Yankee Nuclear Power Corporation (“Vermont Yankee”) of its rights and obligations under the Department of Energy’s Standard Contract. There was no waiver because the government promptly and unequivocally objected to the partial assignment.
*1352 “ ‘Waiver’ is a vague term used for a great variety of purposes, good and bad, in the law. In any normal sense, however, it connotes some kind of voluntary knowing relinquishment of a right.” Green v. United States, 355 U.S. 184, 191, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). The government never relinquished its right to challenge Vermont Yankee’s partial assignment of its rights and obligations under the Standard Contract. It was not until 2006 that the government learned, during discovery, that Vermont Yankee breached the Standard Contract when it assigned its right to have the government accept spent nuclear fuel (“SNF”), but failed to assign the obligation to pay the substantial one-time fee for SNF generated prior to April 1983. Upon learning of the breach, the government promptly filed a motion for summary judgment in the Court of Federal Claims, arguing that the partial assignment violated the Assignment of Contracts Act, 41 U.S.C. § 15(a), and was therefore invalid. See Vt. Yankee Nuclear Power Corp. v. United States, 73 Fed.Cl. 236, 240 (Fed.Cl.2006).
The fact that the government continued to accept payments under the Standard Contract after learning of the breach is insufficient to establish waiver. When a party timely and unambiguously objects to a breach, he does not forfeit his claim by continuing to accept payments under a contract. See N. Helex Co. v. United States, 455 F.2d 546, 555 (Ct.Cl.1972) (explaining that a contractor’s “acceptance of partial payment, even without notation on the check, does not waive his claim”); Inland Trucking Corp. v. United States, 150 Ct.Cl. 642, 654, 281 F.2d 457 (Ct.Cl.1960) (emphasizing that a contractor did not waive his right to sue for breach by accepting “final payment” under a contract). In Westfed Holdings, Inc. v. United States, for example, we concluded that a bank had not waived its right to seek damages notwithstanding the fact that it had continued to accept “hundreds of millions of dollars from the government” following the government’s breach. 407 F.3d 1352, 1360 (Fed.Cir.2005). We explained that because the government knew of the bank’s “timely reservation of rights in protest to the breach,” the continued acceptance of payments under the contract did not act as a waiver. Id.
A similar analysis applies here. Although the government continued to accept payments as required by the Standard Contract after learning of Vermont Yankee’s breach, it preserved its right to challenge the partial assignment by filing a timely motion to have that assignment invalidated. See All-Ways Logistics, Inc. v. USA Truck, Inc., 583 F.3d 511, 517 (8th Cir.2009) (emphasizing that “there can be no waiver when the injured party does not manifest an intent to waive the breach”). “A party to a contract may waive the breach of an agreement by the continued acceptance of performance by the breaching party without reservation of rights.” Westfed, 407 F.3d at 1360; see also Ling-Temco-Vought, Inc. v. United States, 475 F.2d 630, 637 (Ct.Cl.1973) (applying the waiver doctrine where a contractor continued to perform under a contract and “no reservation of rights was made known”). Conversely, however, the waiver doctrine has no application where, as here, the non-breaching party promptly and vociferously protests a breach. See Cole Taylor Bank v. Truck Ins. Exch., 51 F.3d 736, 740 (7th Cir.1995) (explaining that while a victim of breach of contract must take some action to protect his contractual rights, he “is not required upon learning of the breach to wail and tear his hair”).
Tuftco Corp. v. United States, 614 F.2d 740 (Ct.Cl.1980), upon which the court re *1353 lies, is inapposite. There, we concluded that the government waived its right to object to contract assignments where the contracting officer had assured the contractor “that despite the Anti-Assignment Act, the assignments were proper and would be recognized by [the government].” Id. at 745. Here, by contrast, the government never approved of, or acquiesced in, the partial assignment, but instead immediately sought redress by seeking to have that assignment invalidated.
“Waiver is an affirmative defense, as to which the breaching party bears the burden of proof.” Westfed, 407 F.3d at 1360. Mere assertions are not enough.