In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-2285

NICHOLAS KNOPICK,

*Plaintiff-Appellant,*

*v.*

JAYCO, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 16-CV-256 — **Jon E. DeGuilio**, *Judge.*

ARGUED FEBRUARY 23, 2018 — DECIDED JULY 11, 2018

Before FLAUM, SYKES, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* In his telling, plaintiff Nicholas Knopick bought a $415,000 jalopy, but to be more precise, a limited liability company he controls bought the $415,000 jalopy. This factual shift determines the outcome of this case. Knopick has sued the manufacturer under the vehicle's express limited warranty. That warranty does not cover the vehicle because the warranty excludes from coverage all vehicles purchased by business entities—like limited liability

companies. The district court granted summary judgment to the manufacturer. We affirm.

I.  *Undisputed Facts for Summary Judgment*

In reviewing a grant of summary judgment, we review the facts and draw all inferences from conflicting evidence in the light reasonably most favorable to Knopick as the non-moving party. *Greengrass v. International Monetary Systems Ltd.*, 776 F.3d 481, 485 (7th Cir. 2015). Given this summary judgment lens, we do not vouch for the objective truth of all of these facts.  See *KDC Foods, Inc. v. Gray, Plant, Mooty, Mooty & Bennett, P.A.*, 763 F.3d 743, 746 (7th Cir. 2014).

In July 2012, Nicholas Knopick purchased a luxury recreational vehicle (or "RV," as the contract documents refer to it) from an independent dealer in Iowa for $414,583.  The RV was manufactured by defendant Jayco, Inc. When filling out the paperwork and taking title, Knopick signed the documents on behalf of a company he alone controlled, Montana Freedom Rider, LLC. Among the documents that Knopick signed for the LLC was the registration form for Jayco's two-year limited manufacturer's warranty registration.

The limited warranty disclaims all implied warranties and substitutes more restrictive terms. Three clauses in the limited warranty are central to this case. First, the warranty makes plain that it "does not cover … any RV used for rental or other commercial purposes." Second, to remove ambiguity from the phrase "commercial purposes," the warranty explains that an RV "has been used for commercial and/or business purposes if the RV owner or user files a tax form claiming any business or commercial tax benefit related to the RV, or if the

RV is purchased, registered or titled in a business name." Finally, anticipating a disgruntled buyer's future claims that the company might waive any of the warranty's limitations by performing free repairs not actually required by the warranty's terms, a separate clause states that "performance of repairs regarding anything excluded from coverage under this limited warranty shall be considered 'good will' repairs, and they will not alter the express terms of this limited warranty."

Almost immediately after purchasing the vehicle in July, Knopick discovered he had purchased a $415,000 lemon. According to Knopick, the RV leaked, smelled of sewage, had paint issues, and contained poorly installed features, including bedspreads screwed into furniture and staples protruding from the carpet. After taking possession of the vehicle in Iowa, Knopick drove it to Jayco's factory in Indiana for repairs. The following month, he picked up the RV in Indiana intending to drive it to his home in Texas. Concerned about continued problems with the RV, Knopick dropped it off at a repair facility in Missouri, where a Jayco driver picked it up and drove it back to Indiana for further repairs. In December, Jayco had a driver deliver the coach to Knopick in Arkansas. Knopick remained unsatisfied with the condition and requested a full refund later that month, which Jayco apparently refused.

In July 2015, Knopick sued Jayco in state court in Florida for breach of warranty under state law and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. Jayco removed the action to federal court in Florida, and the case was then transferred to the Northern District of Indiana. That district court entered summary judgment for Jayco on all claims in May 2017, finding that Knopick had no rights under the express

warranty because it was actually purchased by a business entity. We review *de novo* the district court's decision granting summary judgment. *Montgomery v. American Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010).

II. *Analysis*

Knopick's decision to have his limited liability company purchase the vehicle—for tax benefits or perhaps other reasons—poses soluble issues of federal jurisdiction but bars his warranty claims against Jayco on the merits.

A. *Federal Jurisdiction*

We begin with the jurisdictional questions. Under the Magnuson-Moss Warranty Act, federal district courts have the authority to adjudicate disputes between consumers and warrantors, but only if the amount in controversy is at least $50,000. 15 U.S.C. § 2310(d)(1)(B) & (3)(B). Neither party raised the issue in the course of this litigation, but we have an independent obligation to determine that jurisdictional requirements are satisfied. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 287–88 & n.10 (1938). In his original complaint, Knopick alleged that he sought damages in excess of $15,000. In its notice of removal, Jayco claimed that the amount in controversy was $314,583, which it alleged was the full price of the RV, since Knopick, before filing suit, had told the company he wanted a full refund.

At oral argument, however, Knopick's attorney disputed Jayco's claim that the refund amount was the amount in controversy by stating that for purposes of litigation, Knopick sought "diminishment in value damages or special damages," specifically the "difference between the purchase price and

possibly the depreciated value of the vehicle." Knopick's attorney agreed that those damages would be greater than $50,000. An alleged amount in controversy satisfies the jurisdictional requirement so long as it is not legally impossible for the claimant to recover that amount in damages on the claim. *Grinnell Mutual Reinsurance Co. v. Haight*, 697 F.3d 582, 585 (7th Cir. 2012). Given the high purchase price of the vehicle, Knopick's assertion that he is entitled to at least $50,000 in damages is not legally impossible, even if he does not seek rescission and a full refund. We accept the parties' consensus that his claim meets the amount-in-controversy requirement for removal to federal court under the Act.

Another potential jurisdictional issue is whether Knopick as an individual distinct from his LLC has standing to assert these claims, or whether his status raises only an issue of the real party in interest, which is not a jurisdictional question. *Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 756 (7th Cir. 2008). Normally, a natural person is not the real party in interest for bringing a suit based on a corporation's rights, even when the person is the sole owner of the corporation. See *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 477 (2006). We treat this as an issue of the real party in interest under Rule 17 of the Federal Rules of Civil Procedure and have in the past analyzed the issue as one of prudential standing, which would allow us to exercise discretion over whether to hear the case on the merits. See *Rawoof*, 521 F.3d at 756, 760 (sole shareholder had constitutional standing but not prudential standing to assert claim that belonged to corporation); *Nocula v. UGS Corp.*, 520 F.3d 719, 726 (7th Cir. 2008).

Though earlier cases speak in terms of "prudential standing" and permit courts to dismiss actions *sua sponte*, the Supreme Court has more recently called into question the bases of prudential standing. In *Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014), the Court explained that describing as "prudential standing" the legal issue of which party could sue under a statute was a "misnomer." *Id.* at 1387 (citation omitted). Instead, the court defined the inquiry as "a straightforward question of statutory interpretation" to determine on the merits whether the party had a cause of action under the statute. *Id.* at 1388. The Court reserved the question whether its holding extended to third-party standing, *id.* at 1387 n.3, but its reasoning suggests that whether a shareholder has the ability to assert a corporation's rights is a matter determined under the substance of corporate and agency law rather than federal jurisdiction. *Domino's Pizza*, 546 U.S. at 477; *Rawoof*, 521 F.3d at 757; see *Lexmark*, 134 S. Ct. at 1387.

In any event, Jayco has not contested Knopick's ability to assert the LLC's rights, and Jayco's counsel mentioned in oral argument that he had found evidence of an assignment in discovery and chose not to make an issue of the real party in interest. The record confirms that the LLC assigned its breach of warranty claims to Knopick five months after he filed the lawsuit. Since Jayco has conceded this issue and since Knopick now has the right to bring the suit (even if he lacked it at the time he filed), we see no reason to exercise our power to dismiss this case on prudential standing grounds, assuming that power survives *Lexmark*. The district court had jurisdiction, and so do we. We proceed to the merits.

B.  *Warranty Claims*

Based on the unambiguous language of the manufacturer's warranty, Knopick's RV is excluded from coverage. The warranty makes plain that it does not apply to RVs purchased by or titled to LLCs. Knopick's RV was clearly purchased by and titled to his LLC. The warranty does not cover Knopick's RV.

To avoid this conclusion, Knopick argues that Jayco waived this "business-purpose RV" exclusion by performing some repairs on the vehicle at no charge immediately after the purchase, thus treating the RV as if it were actually covered by the manufacturer's warranty. Jayco's warranty anticipates such disputes. The warranty states that "performance of repairs regarding anything excluded from coverage under this limited warranty shall be considered 'good will' repairs, and they will not alter the express terms of this limited warranty." This non-waiver clause applied to the repairs on this RV, which fell within the exclusion for vehicles with commercial or business purposes. The repairs to Knopick's RV were therefore "good will" repairs that did not alter the warranty's exclusion of his RV from coverage.

Knopick's waiver argument would be shaky even without this protective clause. Waiver in contract law is the "intentional relinquishment of a right." *Cole Taylor Bank v. Truck Insurance Exchange*, 51 F.3d 736, 739 (7th Cir. 1995). If not properly contained, the doctrine of waiver can seriously damage the security and predictability that the law provides for parties to a written contract. *Id.* at 737. For this reason, courts confronted with contractual waiver arguments must take care to prevent unintentional expansion of the doctrine. Knopick fails to identify any contractual right that Jayco waived.

Rights subject to waiver doctrine have a familiar shape. These rights endow one party—the obligee—with the power to compel the other party—the obligor—to perform a duty in accordance with the contract. See Wesley Newcomb Hohfeld, Some Fundamental Legal Conceptions as Applied in Judicial Reasoning 23 Yale L.J. 16, 32 (1913) ("'Duty' and 'right' are correlative terms. When a right is invaded, a duty is violated."). When the waiving party clearly informs the obligor that she need not perform a contractual duty, the obligor can later assert waiver against an effort by the waiving party to enforce that same duty. "In essence, the concept of waiver … is … designed to prevent the waiving party from lulling the other party into a belief that strict compliance with a contractual duty will not be required and then … suing for noncompliance." Williston on Contracts § 39:15 (4th ed. 2018). As this suggests, waiver is ultimately a defense that shields one party from liability for non-performance of duties strictly outlined in a contract.

Knopick suggests that the right at the center of its waiver argument is Jayco's right to claim that the limited warranty did not cover Knopick's RV. If that right sounds confusing, it is. This supposed right of Jayco's—if it is a right at all—is not the kind readily subject to waiver; it gives Jayco no power to compel Knopick's performance of a duty of any kind. The warranty exclusion instead clarifies that Knopick and his LLC have no right to compel Jayco's performance of duties that could otherwise be enforced against it under the manufacturer's warranty. The exclusion clause serves as a defense, shielding Jayco from liability under the express warranty, based on Knopick's (and perhaps the dealer's) choice about how to handle the purchase and title of the RV. Knopick's waiver argument would turn the warranty and the rule of

waiver on its head by transforming waiver's limited role as a shield (excusing non-performance) into a sword capable of compelling performance and creating new duties. The effects of such a new rule would not be benign. Merchants and other contracting parties could not act as good business partners, going beyond their strict contractual duties, without fear of obliging themselves to perform new and broader duties, beyond the express terms of the contract.

The facts of this case illustrate the reasons for the rule. A seller that wants to do a good turn for a customer by undertaking $500 in repairs should be able to do so without putting itself on the hook for more than $50,000 in repairs. In business generally and in consumer markets, a contracting party's willingness to go beyond her strictly enforceable legal obligations is a key commercial lubricant. It facilitates trust, long-term relationships, repeat customers, and referrals. Attaching legal liability an order of magnitude or two beyond the cost of the "good-will" repairs, as Knopick would have us do, would discourage low-cost and amicable resolutions to minor commercial disputes.[1]

We need not consider whether the manner in which Jayco conducted these good-will repairs or represented them to Knopick shows intent to waive the business purpose exclusion or even more improbably the good-faith repairs clause. Whatever intent lay behind Jayco's actions is immaterial since

---

[1] This case does not involve the doctrine of equitable estoppel. Knopick has not argued, and nothing in the record suggests, that Jayco performed the good-will repairs to lull him into sleeping on his legal rights under a "lemon law" or other consumer protection law and then stopped repairing the vehicle after those rights expired. Cf. *Cole Taylor Bank*, 51 F.3d at 739.

the repairs themselves could not effect the relinquishment of a waivable right.

We also need not consider Knopick's criticism of the district court for choosing not to address the evidence he presented in his retained expert witness report. Though the report may have some utility in aiding a court to determine what components of the vehicle might be covered by technical language in the warranty and assessing diminishment in value, those issues are not relevant to the warranty exclusion for commercial vehicles. As presented in this appeal, this case involves purely legal issues of contract interpretation and waiver.

The obvious question arises: why would a consumer structure such a large purchase in a way that strips him of the protection of the manufacturer's standard warranty? And what to make of Knopick using a Montana LLC despite his having no ties to the state discernible in the record? The unsurprising answer is taxes. At oral argument, Knopick's lawyer asserted: "Knopick purchased the recreational vehicle through the LLC solely for the purpose of sales tax advantage," and the business entity serves "no other purpose whatsoever." We leave to others consideration of the state tax consequences of this treatment of the transaction. See *Thomas v. Bridges*, 144 So. 3d 1001 (La. 2014) (holding Louisiana could not assess sales tax on Louisiana resident's use of Montana LLC to purchase recreational vehicle); *Free Enterprises, LLC v. Dep't of Treasury*, No. 306195, 2012 WL 5852869 (Mich. App. 2012) (holding that Michigan could not assess use tax on Michigan resident's use of Montana LLC to purchase recreational vehicle). As we have said before, the "line between permissible tax avoidance and forbidden tax evasion is too fine to be made the fulcrum for

resolving a private contract dispute." *Licciardi v. Kropp Forge Div. Employees' Retirement Plan*, 990 F.2d 979, 984 (7th Cir. 1993).

The judgment of the district court is

AFFIRMED.